**UNITED STATES of America**

v.

**John DOE, Defendant.**

**No. CRIM. 02–0406(JDB).**

United States District Court, District of Columbia.

Jan. 26, 2006.

## MEMORANDUM OPINION

BATES, District Judge.

The sentencing of defendant John Doe [1] compels this Court to consider whether, in light of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), federal district courts may impose sentences below the range suggested by the now-advisory United States Sentencing Guidelines solely to mitigate perceived sentencing dispari- ties between defendants convicted of pos- sessing or distributing cocaine base (crack) and those who are convicted of possessing or distributing a like quantity of powder cocaine. The Court is not altogether com- fortable with a sentencing scheme that prescribes significantly lengthier sentences for crimes involving one type of cocaine than it does for crimes involving the same amount of the drug in another form, espe- cially because the more severe crack pen- alties tend to fall disproportionally on street-level offenders and members of vul- nerable populations. Nonetheless, the Court cannot deem such uneven treatment to create "unwarranted sentence dispari- ties," within the meaning of the federal sentencing statute, 18 U.S.C. § 3553(a)(6), given Congress's repeated endorsement of harsher sanctions for crack offenders than for powder-cocaine offenders. To do so— that is, to treat as similar that which Con- gress consistently has chosen to treat as dissimilar—would effectively substitute this Court's policy judgment or preference for the considered judgment of Congress. Nothing in *Booker* confers such authority on federal courts. Nor does *Booker* un- dermine Congress's power to define of- fenses and fix criminal penalties or its concomitant authority to impose con- straints on judicial discretion by specifying the factors that judges may consider at sentencing.[2] Assessment of the relevant sentencing factors, applied to the individu- al circumstances of this defendant, does

---

1. This case remains under seal. Accordingly, the Court uses a pseudonym in place of the defendant's true name in this opinion and has omitted factual details except as necessary to address the primary legal issue involved in defendant's sentencing. Other sentencing is- sues were thoroughly addressed at the Janu- ary 23, 2006, sentencing hearing.

2. Of course, congressional authority in this area is not unbounded, as *Booker*'s Sixth Amendment analysis demonstrates. Thus, while it would be within Congress's power to preclude federal judges from considering any factor other than the Guidelines in sentenc- ing, and thereby to reinstate a mandatory guidelines system, Congress could do so only if the Guidelines themselves were compliant with the Constitution—i.e., only if the Guide- lines *did not permit judges to find facts that would increase sentences above the maximum that otherwise would be imposed based on the facts found by the jury or admitted by the defendant* (as well as the fact of a prior con- viction or convictions).

not, the Court concludes, warrant a sentence below the advisory range set by the Guidelines. Thus, as explained below, the Court has sentenced defendant to a term of imprisonment that is consistent with the advisory Guidelines range as well as with unambiguous legislative directives.

## BACKGROUND

Defendant pleaded guilty to conspiracy to distribute and possess with intent to distribute cocaine base and to possession with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), and 846. At a hearing held on January 23, 2006, the Court sentenced defendant to a term of imprisonment of 121 months. In doing so, the Court rejected several arguments by defendant for a reduced sentence, including his primary argument based on the crack-powder disparity, which the Court now explains more fully here.

## ANALYSIS

### I. Post-*Booker* Sentencing Regime

*Booker* inaugurated a new era in federal criminal sentencing. By excising those portions of the Federal Sentencing Act that obligated judges to adhere to the Sentencing Guidelines, the Supreme Court put in place a sentencing regime under which the Guidelines are now merely advisory. *See* 125 S.Ct. at 757. This remedy was crafted to cure a Sixth Amendment defect caused by the mandatory nature of the Guidelines.[3] Under the post-*Booker* system, "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *Id.* at 767. "[A] sentencing court is required 'to consider Guidelines ranges' applicable to the defendant, but is permitted 'to tailor the sentence in light of other statutory concerns as well.'" *United States v. Coumaris*, 399 F.3d 343, 351 (D.C.Cir.2005) (quoting *Booker*, 125 S.Ct. at 757). Hence, as this Circuit has summarized, *Booker*'s modification of the Federal Sentencing Act—by severing and excising the mandatory Guidelines provisions—" 'requires the sentencing court to consider Guidelines ranges, *see* 18 U.S.C.A. § 3553(a)(4) (Supp. 2004), but ... permits the court to tailor

---

**3.** Booker completed a trilogy of cases in which the Supreme Court dramatically reshaped the rules of criminal sentencing based on its interpretation of the Sixth Amendment's jury-trial guarantee. In *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Court held, as a constitutional matter, that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," except for the fact of a prior conviction. *See* 530 U.S. at 490, 120 S.Ct. 2348. *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), subsequently defined the "statutory maximum" for *Apprendi* purposes as "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *See* 542 U.S. at 303, 124 S.Ct. 2531. The Court then held in *Booker* that, to the extent they are mandatory, the United States Sentencing Guidelines violate defendants' Sixth Amendment rights by using judge-found facts to trigger higher penalties (that is, by imposing a sentence that is greater than otherwise would be required under the Guidelines based only on the facts that were found by the jury or admitted by the defendant). *See* 125 S.Ct. at 755–56. To remedy that constitutional deficiency, the Court severed and excised those provisions of the Federal Sentencing Act that made the Guidelines mandatory—opting to do that rather than to leave in place the mandatory aspects of the system and eliminate sentence enhancements based on judicial fact-finding (which would have been necessary to comply with the strictures of the Sixth Amendment). *Id.* at 757. By doing so, the Court made the Guidelines effectively advisory and thereby eliminated any constitutional concern with sentencing based on judge-found facts.

the sentencing in light of other statutory concerns as well, *see* § 3553(a) ·(Supp. 2004).' " *United States v. Simpson,* No. 04–3129, slip op. at 8 (D.C.Cir. Dec.13, 2005) (quoting *Booker,* 125 S.Ct. at 757).

Specifically, the "other statutory concerns" are those specified in 18 U.S.C. § 3553(a), which· instructs judges, "in determining the particular sentence to be imposed, [to] consider" the following factors (in·addition to the Guidelines and the policy statements of ·the United States Sentencing Commission):

- "the nature and ·circumstances of the offense and the history and characteristics of.the defendant;"

- the need for the sentence imposed to reflect the seriousness of the offense, promote respect for 'the law, provide just punishment, afford adequate deterrence to criminal conduct, protect the public from further crimes by the defendant, and provide the defendant with rehabilitation, education and training, and other correctional treatment;

- "the need to avoid unwarranted sentence· disparities among defendants with similar records who have been found guilty of similar conduct;" and

- the need to provide restitution to victims. ·

*See* 18 U.S.C. § 3553(a). Sentences are subject to review on appeal for "reasonableness" in light of the factors specified in

section 3553(a). *Booker,* 125 S.Ct. at 765–66.[4]

There is a broad consensus that *Booker* requires judges to engage in a two-step analysis to determine a reasonable sentence. "[A] district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence." *United States v. Clark,* 434 F.3d 684, 685 (4th Cir.2006) (quoting *United States v. Hughes,* 401 F.3d 540, 546 (4th Cir.2005)); *see also Mickelson,* 433 F.3d at 1055 ("[C]alculation of the appropriate guideline sentence is only the first step in sentencing decisions under *Booker,* for the court must also consider the § 3553(a) factors before making its ultimate decision."); *United States v. Crosby,* 397 F.3d 103, 113 (2d Cir.2005) ("[A]fter considering the Guidelines and all the other factors set forth in section 3553(a), [the sentencing judge should decide] whether (I) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence."). As it has in all criminal cases following *Booker,* this Court determined defendant's sentence using this two-pronged approach, which provides the

---

**4.** The Guidelines continue to have substantial influence in the determination of the reasonableness of a sentence imposed. Indeed, a few circuits have held that a Guidelines sentence carries with it a rebuttable presumption of reasonableness. *See, e.g., United States v. Mykytiuk,* 415 F.3d 606, 608 (7th Cir.2005); *United States v. Lincoln,* 413 F.3d 716, 717 (8th Cir.2005); *United States v. Gonzalez,* 134 Fed.Appx. 595, 598 (3d Cir.2005) (unpublished order); *see also United States v. Mares,* 402 F.3d 511, 519 (5th Cir.2005) ("[I]t will be rare for a reviewing court to say … a sen-

tence [within a properly calculated Guidelines range] is 'unreasonable.' "). Although the Court is aware of no·post-*Booker* Guidelines sentence that has been found to be unreasonable, three circuits recently have rejected the argument that Guidelines sentences are immune from reasonableness review as a matter of law. *See United States v. Mickelson,* 433 F.3d 1050, 1055–56 (8th Cir.2006); *United States v. Vaughn,* No. 05–1518, 1995 WL 805240, *2–3 (7th Cir. Jan. 6, 2006); *United States v. Martinez,* No. 04–12706, slip op. at 7–9 (11th Cir. Jan.9, 2006).

Court with considerably more discretion in sentencing criminal defendants than it had under the mandatory Guidelines system but still constrains that discretion in accordance with 18 U.S.C. § 3553.

## II. Guidelines Range

For the reasons stated at the sentencing hearing, the Court concludes that defendant's total offense level under the Guidelines (that is, his base offense level with appropriate adjustments) is 32, and that he is placed in criminal history category I. Defendant agrees with this assessment, for the most part.[5] Based on a total offense level of 32 and a criminal history category I, the advisory Guidelines sentencing range is 121 to 151 months' imprisonment.

## III. 18 U.S.C. § 3553 Factors

Having considered the Guidelines sentencing range, see 18 U.S.C. § 3553(a)(4), the Court now turns to the "other statutory concerns" it must consider under *Booker*. The Court may impose a sentence that is within the applicable statutory range yet outside the range suggested by the Guidelines, but it may do so only on the basis of one or more of the factors included in 18 U.S.C. § 3553(a). Moreover, the Court is obligated to construe the factors in section 3553(a) in a manner that is consistent with other relevant statutory provisions, particularly those that define criminal offenses. *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 508, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989) (explaining that the task of construing the meaning of statutory terms begins with a consideration of "the extent to which the text of [the statute] answers the question before [the Court]," and where the text is ambiguous, the Court should "seek guidance from legislative his-

tory and from the [code's] overall structure"); *see also id.* at 528, 109 S.Ct. 1981 (Scalia, J., concurring) ("The meaning of terms on the statute books ought to be determined ... on the basis of which meaning is (1) most in accord with context and ordinary usage ... and (2) most compatible with the surrounding body of law into which the provision must be integrated ....").

### A. Need to Avoid Unwarranted Sentence Disparities: *Crack vs. Powder Cocaine*

Section 3553 specifically directs sentencing courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *See* 18 U.S.C. § 3553(a)(6). Before *Booker*, the then-mandatory Sentencing Guidelines effectively foreclosed any consideration of this sentencing factor unless the Guidelines had not "adequately" taken the circumstances into consideration. *See* 18 U.S.C. § 3553(b)(1) (severed and struck by *Booker*). Because Congress had directed the Sentencing Commission to draft Guidelines that would avoid "unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct," *see* 28 U.S.C. § 991(b)(1)(B), the D.C. Circuit held that judges—under the mandatory Guidelines regime—could not depart from the Guidelines based on a conclusion that the sentencing ranges failed to adequately take account of the similarity between crack and powder-cocaine offenses. *See United States v. Anderson*, 82 F.3d 436, 438–39 (D.C.Cir.1996) (stating that "[n]on-Guidelines sentences [should] occur only where the Commission has completely

---

**5.** Defendant contends that his offense level should be reduced by three levels to 29 due to his acceptance of responsibility. *See* U.S.S.G.

§ 3E 1.1. As explained at the sentencing hearing, the Court has rejected that argument.

overlooked a factor ... or where the defendant's case manifests a circumstance that was considered but which is present in such an extreme form that the Guidelines' adjustment for it is inadequate"). Now that the Guidelines are advisory, however, judges are free—and perhaps required—to take account of sentence disparities when devising a punishment for a particular offender. This development has reinvigorated the debate over the appropriate penalties for crack offenses as compared with powder-cocaine offenses, which is at the core of defendant's argument for a below-Guidelines sentence in this case.

### 1. History of the crack-powder differential

By way of background, Congress first began to differentiate crack from other forms of cocaine in the Anti–Drug Abuse Act of 1986, Pub.L. No. 99–570, 100 Stat. 3207. Employing a quantity-based penalty structure for mandatory minimum sentences, the statute created the "100–to–1 ratio" that distinguishes sentences for powder-cocaine offenders from sentences for crack offenders. The amount of powder cocaine that is necessary to trigger the mandatory minimum five-year sentence (500 grams) is 100 times the amount of crack (5 grams) that is necessary to trigger the same minimum penalty. *See United States v. Smith,* 359 F.Supp.2d 771, 778 (E.D.Wis.2005) (discussing the history of the 100:1 sentencing ratio); *United States v. Tabor,* 365 F.Supp.2d 1052, 1057 (D.Neb.2005) (same); *United States v. Perry,* 389 F.Supp.2d 278, 289 (D.R.I.2005) (same). "Using this ratio as a guide, in 1987, the Sentencing Commission set proportionate sentences for all powder and crack quantities, not just the statutory mandatory minimum sentences." *Tabor,* 365 F.Supp.2d at 1057. Since 1995, however, the Sentencing Commission consistently has recommended reducing or eliminat-

ing the differential. It has issued three reports—in 1995, 1997, and 2002—that have proposed various changes to the Guidelines quantity ratio (ranging from total equalization (1:1) to 5:1 to 20:1) but Congress has either expressly or implicitly rejected those recommendations. *Id.* at 1057–58. Separately, in 2000, legislation that would have lowered the ratio to 10:1 (by making smaller amounts of powder cocaine subject to the mandatory minimums) passed the Senate but never received House approval. *See* United States Department of Justice Office of Legal Policy, *Federal Cocaine Offenses: An Analysis of Crack and Powder Penalties* (March 2002) at 18, *available at* http://www.usdoj.gov/olp/cocaine.pdf (citing the Bankruptcy Reform Act of 2000, H.R. 833, 106th Cong. § 1772 (2000)).

To the extent that there is a discernable rationale for Congress's policy choice of a 100:1 ratio, it appears to have been based on a perception that crack use is more prone to lead to violence or other crime than is powder-cocaine use, that it is more addictive than powder cocaine, and (perhaps most convincing) that its low cost and ease of manufacture makes it more dangerous because it is readily available to youths and other vulnerable groups. *See Smith,* 359 F.Supp.2d at 778; *Tabor,* 365 F.Supp.2d at 1056–57. Critics of the 100:1 ratio—including many distinguished judges and the Sentencing Commission—contend, however, that the differential cannot be supported empirically, morally, or logically. In particular, they note that crack penalties apply more frequently to low-level offenders rather than high-level traffickers (who tend to deal in the powder form of the drug), that the sentences are disproportionate in length relative to the harm that crack use and dealing causes (and as compared with powder cocaine and other drugs), and that the sting of the

harsh crack sentences is felt disproportionately in minority communities (especially in poor inner-city neighborhoods). As a matter of criminal sentencing policy, this Court believes that the arguments against the 100:1 ratio have some merit, although not to the point of supporting a 1:1 ratio. Be that as it may, however, the Court is not persuaded that it can craft a sentence based on such policy considerations and still remain faithful to the requirements of 18 U.S.C. § 3553.

### 2. Post-*Booker* crack sentences

Federal district judges across the country have confronted—or soon will confront—post-*Booker* cases in which defendants urge leniency in sentencing (that is, below-Guidelines sentences) based on the perceived disparity that exists between the penalties prescribed for possession or distribution of a particular quantity of crack and the penalties for possession or distribution of a similar amount of powder cocaine. Several judges, embracing their newfound discretion following *Booker*, have accepted the invitation and imposed sentences lower than what was advised by the Guidelines—although frequently combining considerations about the crack-powder differential with other mitigating factors under 18 U.S.C. § 3553(a).

Among the first cases to address the issue of the crack-powder disparity after *Booker* was *United States v. Smith*, in which Judge Adelman of the Eastern District of Wisconsin reduced a defendant's Guidelines sentencing range of 41 to 51 months (which included a ten-level departure for substantial assistance) to a range of 27 to 33 months because "adherence to the guidelines would result in a sentence greater than necessary and would also create unwarranted disparity between defendants convicted of possessing powder cocaine and defendants convicted of pos-

sessing crack cocaine." *See* 359 F.Supp.2d at 781. The court calculated this range reduction by applying a 20:1 powder-to-crack weight ratio, rather than the 100:1 ratio. *Id.* at 782. Ultimately, Judge Adelman imposed a sentence of 18 months by taking into account additional section 3553 factors. *Id.* (noting "defendant's good conduct since he committed this offense over four years ago, his employment history and community involvement, and his importance to his family").

Other courts have followed suit. Judge Greer of the Eastern District of Tennessee determined that a sentence below the advisory Guidelines range was warranted in *United States v. Clay*, 2005 WL 1076243 (E.D.Tenn.), in part because of the crack-powder disparity (but also because of other factors, such as the defendant's "nightmare of a childhood," *id.* at *2), and therefore sentenced the defendant to 156 months when the Guidelines otherwise recommended a sentence of at least 188 months. *See id.* at *4–6. In *United States v. Williams*, 372 F.Supp.2d 1335 (M.D.Fla.2005), Judge Presnell considered the crack-powder differential in sentencing a defendant to 204 months rather than 360 months. He pointed out that "it was the government that decided to arrange a sting purchase of crack cocaine [from the defendant]" and that "[h]ad the government decided to purchase powder cocaine (consistent with Williams['s] prior drug sales)," the base offense level under the Guidelines would have produced a sentencing range of 37 to 46 months rather than the sentencing range of 140 to 185 months that applied to the crack sale. In *United States v. Perry*, Judge Smith of the District of Rhode Island concluded that "it is virtually impossible to find any authority suggesting a principled basis for the current disparity in sentences" between crack offenders and powder-cocaine offenders. *See* 389 F.Supp.2d at 303. In light of that

disparity, Judge Smith applied a 20:1 powder-to-crack ratio in calculating the sentence and imposed the applicable mandatory minimum of 120 months rather than a sentence within the Guidelines range of 188 to 235 months. Judge Scheindlin of the Southern District of New York, in *United States v. Fisher*, 2005 WL 2542916 (S.D.N.Y.), concluded that the Guidelines ranges for crack offenses "create[ ] unwarranted sentencing disparities," and therefore applied a 10:1 weight ratio in calculating the defendant's sentence. *See id.* at *6–7.

In this District, as well, some judges have taken account of the crack-powder differential in post-*Booker* sentencing. In March of 2005, Judge Robertson issued an opinion in which he explained that he had sentenced two crack dealers to prison terms that were below their respective Guidelines ranges (sentencing one to 96 months rather than within the Guidelines range of 120 to 150 months and sentencing the other to 60 months rather than within the Guidelines range of 70 to 87 months). *See United States v. Harris*, No. 04–CR–0157, slip op. at 1–3 (D.D.C. Mar. 3, 2005). He explained that he had done so, in part, because of "the astonishingly high ratio of the weight of cocaine hydrochloride, or powder cocaine, to that of cocaine base, or crack, that will yield the same punishment." *Id.* at 7.

### 3. This Court lacks authority to correct the disparity

■ Respectfully, this Court must disagree with the conclusion that 18 U.S.C.

§ 3553(a)(6) permits a sentencing court full discretion to take account of the perceived disparity between the recommended sentences for crack offenses and powder-cocaine offenses, absent individualized circumstances relating to the defendant.[6] Nothing in this provision of the United States Code suggests that judges may ignore the express conclusions of Congress in determining what constitutes an "unwarranted sentence disparit[y]." Disparity is a normative principle that necessarily encompasses a judgment about which characteristics of the offense (or the offender) should matter and which characteristics should not. In section 3553(a)(6), Congress has made such a judgment, declaring—albeit at a high level of generality—that uniformity matters only in cases in which offenders have "similar records" and are convicted of "similar conduct." Thus, to hold that the Guidelines create an "unwarranted ... disparit[y]" between the sentences for crack and those for powder cocaine, a Court necessarily must conclude that possession or distribution of crack cocaine and possession or distribution of powder cocaine are in fact "similar" when they involve the same quantity of drug—a conclusion that Congress unequivocally rejected when it set the mandatory minimum sentences for crack and powder cocaine offenses. The unmistakable implication of the penalty scheme Congress created (and subsequently re-endorsed) is that possession of 5 grams of crack is "similar" to possession of 500 grams of powder cocaine. Whether or not the Court agrees with that

---

6. Even if the Court *could* take this sentencing differential *into* account in a categorical manner, at least two federal appeals courts have specifically held that this is not the type of disparity that a sentencing court *must* take into account post-*Booker*. *See United States v. Gipson*, 425 F.3d 335, 336 (7th Cir.2005) ("Given the fact that we have routinely upheld the differential against constitutional at-

tack ... and, under the pre-*Booker* guideline system, rejected wholesale downward departures from the guideline on this basis, ... it would be inconsistent to require the district court to give a nonguideline sentence based on the differential."); *United States v. Cawthorn*, 429 F.3d 793, 803 (8th Cir.2005) (adopting the 7th Circuit's reasoning in *Gipson* ).

determination of similarity is of no moment—the Court must abide by it. The Guidelines may be merely advisory post-*Booker*, but section 3553 is not; it is a legislative command. And in applying that law, courts must give it a meaning that is consistent with other statutory pronouncements (particularly more specific legislative enactments, such as those that prescribe crack and powder-cocaine penalties).[7] Judges are not authorized by *Booker*—or any other legal authority, for that matter—to substitute their own ideas about sound penological policy for the policy chosen by Congress, whether it be Congress's choice to punish crack offenders more severely than powder-cocaine offenders or Congress's broader policy of treating drug weight as a measure of (or a proxy for) culpability. *See Tabor*, 365 F.Supp.2d at 1059 ("Ultimately ... the determination that one crime is 'worse' for society than another crime and therefore worthy of greater punishment is a predictive value judgment and, more importantly, a quintessentially legislative one.").

Moreover, a categorical deviation by this Court from the advisory Guidelines range for a crack-offense sentence, based solely on the conclusion that the disparity between the sentences for crack and powder cocaine is unwarranted, will do little to further the cause of sentencing uniformity. Although it may lessen the overall disparity between sentences for powder-cocaine offenses and sentences for crack offenses involving similar drug quantities, such a deviation would in all likelihood create greater inter-court (and intra-court) sentencing disparity among federal offenders with similar records who commit *identical* offenses—that is, among crack offenders.

*Cf. United States v. Clark*, 434 F.3d at 687 (4th Cir.2006) ("Creating sentencing disparities among federal defendants for no other reason than to eliminate the accepted disparities that inhere in the parallel federal and state systems of justice is unreasonable.").

As a point of comparison, it is worth considering another sentencing "disparity" between two federal crimes that arguably involve "similar conduct": (1) possession of a concealed dangerous weapon on an aircraft, 49 U.S.C. § 46505 (which has a maximum statutory penalty of "not more than 10 years" and calls for a Guidelines sentence of 4 to 10 months on the low end and 21 to 27 months on the high end), and (2) possession of a firearm or other dangerous weapon in a federal facility other than a federal court, 18 U.S.C. § 930 (which has a maximum statutory penalty of "not more than 1 year" and calls for a Guidelines sentence of 0 to 6 months on the low end and 12 to 18 months on the high end). A person carrying a concealed dangerous weapon faces a significantly greater advisory Guidelines sentence (relatively speaking) if he is on an airplane rather than, say, in the U.S. Capitol. Would it be proper for a sentencing judge to conclude that section 3553(a)(6) authorizes correction of this "disparity" based solely on a judicial conclusion that the two forms of conduct are "similar," and notwithstanding the clear expression by Congress in setting the statutory maximums that the two offenses are *dissimilar* (i.e., that an airplane offense is more serious than a federal-facility offense)? Certainly not. It is equally improper for federal judges categorically to correct what they, perhaps correctly, perceive to be a disparity be-

7. *See generally Norwest Bank Minnesota Nat'l Ass'n v. FDIC*, 312 F.3d 447, 451 (D.C.Cir. 2002) ("When both specific and general provisions cover the same subject, the specific provision will control, especially if applying the general provision would render the specific provision superfluous ....").

tween crack and powder cocaine sentences when Congress has to date concluded otherwise.

Other courts have made similar observations about the scope of the meaning of "disparity" in section 3553(a)(6). The Fourth Circuit recently overturned a sentence in which the district court apparently considered the disparity between the sentencing range for a crack offense under federal law and the sentencing range that would apply to the same conduct if prosecuted under state law. "These disparities are not those that section 3553(a)(6) seeks to avoid," the court stated. *Clark,* 434 F.3d at 686. "The sole concern of section 3553(a)(6) is with sentencing disparities among federal defendants." *Id.* Similarly, federal courts have indicated that, where Congress intended a particular disparity to exist—specifically the geographic disparity that results from the availability of so-called "fast-track" programs in some jurisdictions but not in others—sentencing courts may not treat that as a "disparity" within the meaning of section 3553(a)(6). *See United States v. Hernandez–Cervantes,* No. 05–5414, 2005 Fed.App. 1013N, 2005 WL 3529114, *3 (6th Cir. Dec.3, 2005) ("The legislature instructed the courts, in § 3553(a)(6), to avoid 'unwarranted sentence disparities' but explicitly authorized disparities based on fast-tracking in the PROTECT Act. There is no conflict between these statutes: Congress determined, based on sound principles of judicial economy, that geographic sentencing disparities due to fast-tracking are not 'unwarranted.' These disparities therefore do not violate § 3553(a)(6)."); *see also United States v. Martinez–Flores,* 428 F.3d 22, 30 n. 3 (1st Cir.2005) ("It is arguable that even post-Booker, it would never be reasonable to depart downward based on disparities between fast-track and non-fast-track jurisdictions given Congress' clear (if implied) statement in the PROTECT Act

provision that such disparities are acceptable.").

Even more to the point, the First Circuit held earlier this month, in the first published federal appellate decision post-*Booker* to squarely confront the issue this Court now faces, that a district court's decision to "jettison[ ] the guidelines and construct[ ] a new sentencing range by using a 20:1 crack-to-powder ratio in lieu of the 100:1 ratio embedded in both the statutory scheme and the guidelines ... amounted to error as a matter of law." *United States v. Pho,* 433 F.3d 53, 62 (1st Cir.2006). In doing so, the court categorically rejected the argument that section 3553(a)(6) authorizes sentencing judges to take account of the crack-powder sentencing differential:

> This argument misapprehends the nature of the disparity that ought to concern us.
>
> Although the district court's approach does ameliorate the disparity in sentences for crack and powdered cocaine offenses, what counts is the uniformity in sentencing *sought by Congress.* That uniformity "does not consist simply of similar sentences for those convicted of violations of the same statute" but "consists, more importantly, of similar relationships between sentences and real conduct." *Booker,* 125 S.Ct. at 761. Congress plainly believed that not all cocaine offenses are equal and that trafficking in crack involves different real conduct than trafficking in powder. Otherwise, it would not have ordered dissimilar treatment of the two types of offenses in the [Anti–Drug Abuse] Act [of 1986]. Clearly, then, Congress· intended that particular disparity to exist, and federal courts are not free to second-guess that type of decision.

*Id.* at 63–64 (emphasis in original).

To be clear, the Court does not believe that Congress's determination—that a

crack offense merits a sentence equivalent to the sentence for an offense involving 100 times as much powder cocaine—requires a sentencing judge to adhere rigidly to a 100:1 ratio in all crack or powder-cocaine sentencing decisions. Indeed, in some cases, possession of a large quantity of powder cocaine might implicate some other section 3553(a) factor, particularly the "nature and circumstances of the offense." Viewed in this light, factors that would favor leniency might properly receive less weight in the case of a major powder-cocaine trafficker than they would in the case of someone who possessed a comparatively much smaller amount of crack. But what Congress's policy choice *does* mean is that courts cannot categorically treat as similar that which Congress has chosen to treat as dissimilar. It is simply not up to federal judges to reject as bad policy a legislative determination made by Congress. So, in circumstances where (as here) no other section 3553 factors support mitigation in sentencing, judges cannot conclude that a Guidelines sentence for crack (which reflects the 100:1 ratio) creates an "unwarranted sentence disparit[y]" solely because an offender who possessed the same amount of powder cocaine would get a much lower sentence. Right or wrong, wise or unwise, good policy or bad, Congress's judgment—in effect, that the two types of conduct are not "similar" and therefore that any disparity is not "unwarranted"—trumps that of individual sentencing judges.

Nor does this conclusion render the disparity factor of section 3553(a)(6) a nullity, as there may be individualized circumstances where a court could conclude that a Guidelines sentence creates an unwarranted sentencing disparity "among defendants with similar records who have been found guilty of similar conduct" without having to contradict a specific congressional determination. Were there a case, for instance, in which the Guidelines called for a harsher sentence for the less culpable of two co-defendants or accomplices, given case-specific circumstances, it would be perfectly in keeping with the discretion contemplated by section 3553(a)(6) for the sentencing court to take account of that fact and adjust one of the sentences accordingly (perhaps by sentencing below the Guidelines range for the less culpable defendant, or perhaps by sentencing above the Guidelines range for the other defendant). *See Pho*, at 65 ("[W]e do not intend ... to suggest that, in a drug-trafficking case, the ... severity of a projected guideline sentence may not be taken into account on a case-by-case basis."). But even though section 3553(a)(6) is amenable to individualized application in some situations, this case does not present any particular facts that lead this Court to conclude that the sentence imposed would result in an unwarranted disparity among defendants with similar records who have been found guilty of similar conduct.[8]

---

8. At the sentencing hearing, defendant argued that the particular circumstances of this case warranted an individualized sentence adjustment under section 3553(a)(6) because sentencing defendant within the advisory Guidelines range would fail to take account of the fact that this particular crack offense did not involve violence (one of the principal concerns of Congress in enacting the tougher sentences for crack offenders). Apparently, defendant's 3553(a)(6) theory is that courts should consider—as a corollary to "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"— the need to avoid unwarranted sentence *uniformity* among defendants who have been found guilty of *dissimilar* conduct (in this case, non-violent crack offenses and violent crack offenses). This argument, however, calls for an equally categorical rejection of a determination made by Congress—specifically, its decision about how to define the offenses charged. And, in any event, the Guide-

Indeed, nothing in this decision should be read to suggest that the Guidelines for crack offenses must be applied in all circumstances (i.e., that they are effectively mandatory) based on Congress's rejection of ratios lower than 100:1. Rather, the Court is simply saying that, if there is a rationale for deviating from the advisory Guidelines range in a particular case involving a crack offender, it must be based on case-specific considerations and cannot come from a categorical rejection of the Guidelines due to a perceived disparity between the penalties prescribed for crack offenses and those prescribed for powder-cocaine offenses. That is a call for Congress, not individual federal judges, to make. Perhaps now, prodded by judicial and other observations regarding the inequity of the current crack and powder-cocaine sentencing structure, Congress will again consider and (one hopes) address this important issue.

### B. Other Section 3553 Considerations

 The Court is left, then, with the question whether there are any case-specific considerations—outside of section 3553(a)(6)—that warrant a below-Guidelines sentence here. The Court has considered the other sentencing factors identified in 18 U.S.C. § 3553(a), such as the nature and circumstances of the offense and the history and characteristics of the defendant. Defendant has pointed to his absence of any criminal history, the non-violent nature of the offenses underlying the instant convictions, his relatively consistent employment history, and his recent educational efforts, volunteer work, and church attendance. Some of these considerations already are accounted for in the advisory Guidelines calculation; others have little factual basis or impact on the sentencing assessment. As the Court explained at the sentencing hearing, none of these section 3553(a) factors support any deviation—up or down—from the advisory Guidelines range, although they do support a sentence at the very bottom of that range. Hence, the Court has concluded that a sentence within the Guidelines range of 121 to 151 months is appropriate—specifically a sentence of 121 months—based on all the circumstances relating to this case and this defendant, assessed under the framework of the section 3553(a) factors.

### CONCLUSION

For the foregoing reasons and based on the entire record in this case, the Court concludes that defendant should be sentenced to a term of imprisonment within the advisory Guidelines range of 121 to 151 months, there being no reason consistent with the meaning and structure of 18 U.S.C. § 3553 to impose a different penalty. The Court rejects defendant's argument for a categorical revision of the Guidelines based on the perceived crack-powder cocaine sentencing disparity. A separate Order of Judgment and Commitment has been issued.

lines (and other statutes) do take account of violence associated with a drug offense, which may lead to longer sentences for violent crack offenders than non-violent crack offenders (as defendant apparently believes is appropriate, even if he believes that the proper punishment for a non-violent crack offense is lower than what the Guidelines suggest). Furthermore, this argument is better framed within the parameters of section 3553(a)(1), which calls for sentencing courts to consider "the nature and circumstances of the offense," and the Court has considered it in that context, as well.