**UNITED STATES of America, Appellant,**

v.

**Anthony WILLS, a/k/a Fat Man, a/k/a Sealed Deft # 1, Defendant–Appellee.**

**Docket No. 06–0115–cr.**

United States Court of Appeals, Second Circuit.

Argued: Oct. 6, 2006.

Decided: Feb. 5, 2007.

Glenn T. Suddaby, United States Attorney for the Northern District of New York, Syracuse, NY, (Elizabeth S. Riker, arguing and on the brief, and Lisa M. Fletcher, of counsel and on the brief) for Appellant.

Robert G. Wells, Syracuse, NY, for Defendant–Appellee.

Before FEINBERG, CABRANES, and SACK, Circuit Judges.

FEINBERG, Circuit Judge.

The government appeals from a sentence imposed in the United States District Court for the Northern District of New York (Frederick J. Scullin, J.) upon Anthony Wills, who was convicted of cocaine and crack possession and conspiracy to possess these substances with intent to distribute them. The government claims that the sentence was unreasonable because the district court erred as a matter of law in its application of 18 U.S.C. § 3553(a)(2)(C) and 18 U.S.C. § 3553(a)(6).[1] Specifically, the government argues, in fashioning a sentence the court should not have considered Wills's likely future deportation under "the need to protect the public," § 3553(a)(2)(C), or the extent of the difference between Wills's sentence and his co-defendants's, § 3553(a)(6). The government further argues that when these factors are removed from the analysis, as they should be, the length of the resulting sentence is unreasonably low. Wills contests the government's arguments, but does not himself appeal the sentence. We hold that the district court did not properly apply the statutory factors listed in § 3553(a). Accordingly, we vacate the sentence and remand for resentencing.

## I. BACKGROUND

Anthony Wills and seven co-defendants were charged with one count of conspiring to (1) possess with intent to distribute cocaine and crack and (2) distribute the substances in Utica, New York. Wills was also charged individually with three counts of possession with intent to distribute cocaine and crack and distribution of these substances. All of Wills's co-defendants (except one who was a fugitive and one who was found incompetent to stand trial) pled guilty to the conspiracy count against them. Wills went to trial on all four counts on which he was charged and in October 2004 was found guilty on the conspiracy count and two of the substantive counts. The jury also found that Wills was an organizer or leader of five or more participants in a conspiracy.

Wills was sentenced in November 2005. The statutory minimum for his crimes was

1. 18 U.S.C. § 3553(a) (hereafter § 3553(a)) provides, in relevant part:

(a) Factors to be considered in imposing a sentence. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [in the Sentencing Guidelines] ...;

(5) any pertinent policy statement ... issued by the Sentencing Commission ...;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

10 years imprisonment. 21 U.S.C. § 841(b)(1)(A). The Sentencing Guidelines range, which was considered by the district court and uncontested by the parties, was 292–365 months (approximately 24 to 30 years). At sentencing, which occurred after the Supreme Court issued its opinion in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), Wills argued for a non-Guidelines sentence. The district court imposed a non-Guidelines sentence of 172 months imprisonment, or approximately 14 years.

At sentencing, the district judge considered the factors listed in § 3553(a). First, with respect to the "nature and circumstances of the offense," § 3553(a)(1), he held that the offense involved a very large amount of cocaine and cocaine base given the community in which it occurred and thus was "very serious." Second, regarding the "history and the characteristics of the defendant," *id.*, the judge noted that Wills had no prior criminal convictions and that the court had received several letters of support from Wills's family and friends as to his character.

The judge next considered the need "to protect the public from further crimes of the defendant" under § 3553(a)(2)(C), and noted that Wills would be deported immediately after his prison sentence was served. The judge alluded to this Court's opinion in *United States v. Restrepo*, 999 F.2d 640 (2d Cir.1993), in which we held that deportation could not be the basis of a downward departure, *id.* at 646–47. But the judge concluded that the then-mandatory nature of the Sentencing Guidelines was critical to the holding in *Restrepo*. He further held that since the Guidelines are advisory after *Booker*, 543 U.S. at 245–46, 125 S.Ct. 738, deportation is now a factor

that the court should consider in relation to the protection of the public. In addition, the judge referred to deportation as an "additional punishment" when summarizing his conclusions.

The court then considered the "need to avoid unwarranted sentence disparities among defendants," § 3553(a)(6), and noted that the longest sentence imposed on Wills's co-defendants was 96 months imprisonment, or eight years. The court acknowledged that the jury had found that, unlike five of his co-defendants, Wills was the leader of the conspiracy and had not cooperated with the prosecution.[2] Nevertheless, the court found that the "sever[ity]" of the sentence disparity between Wills and his five co-defendants was "not appropriate." The judge issued a written statement of reasons that essentially summarized his oral findings.

## II. DISCUSSION

■■■ Federal courts review sentences imposed after *Booker* for "reasonableness." 543 U.S. at 262, 125 S.Ct. 738; see also *United States v. Mejia*, 461 F.3d 158, 162 (2d. Cir.2006). Reasonableness review "involves consideration not only of the sentence itself, but also of the procedures employed in arriving at the sentence." *United States v. Fernandez*, 443 F.3d 19, 26 (2d Cir.), cert. denied — U.S. —, 127 S.Ct. 192, 166 L.Ed.2d 143 (2006). Furthermore, this review focuses "primarily on the sentencing court's compliance with its statutory obligation to consider the factors detailed in 18 U.S.C. § 3553(a)." *United States v. Canova*, 412 F.3d 331, 350 (2d Cir.2005). A sentencing judge commits a "procedural error" if the judge "select[s] a sentence in violation of applicable

---

**2.** These five co-defendants pled guilty to the charges against them, and cooperated with the government in its prosecution of Wills.

law." *United States v. Crosby*, 397 F.3d 103, 114 (2005). A sentence based on a procedural error that is not harmless will not be found reasonable. *Id.*

 "[W]here the record indicates misunderstanding by a district court as to the statutory requirements and the sentencing range or ranges that are arguably applicable, or misperception about their relevance, we may conclude that the requisite consideration has not occurred." *United States v. Toohey*, 448 F.3d 542, 545 (2d Cir.2006). No "robotic incantation" of the factors is required, but a sentence is not reasonable "if legal errors, properly to be considered on appeal, led to its imposition." *Crosby*, 397 F.3d at 113–14. Although district courts enjoy considerably more discretion after *Booker*, "a district court cannot 'import [its] own philosophy of sentencing if it is inconsistent' with the § 3553(a) factors." *United States v. Rattoballi*, 452 F.3d 127, 132 (2d Cir.2006) (quoting *United States v. Dean*, 414 F.3d 725, 729 (7th Cir.2005)).

### A. Deportation

 The government argues that the district court erred as a matter of law by factoring into Wills's sentence his likely deportation following incarceration. The judge explained at the sentencing hearing that he deemed deportation relevant under § 3553(a)(2)(C), which requires a court to consider "the need for the sentence imposed … to protect the public from further crimes of the defendant." The court noted that as a result of Wills's deportation, he would face the "additional punishment of deportation" and would not be

"much of a threat to the public, at least of this country."

### 1. Deportation as Punishment

It was improper for the district court to factor deportation in as an "additional punishment." Indeed, this was the exact treatment rejected in *Restrepo*, a pre-*Booker* case under the mandatory Guidelines regime. In that case, we noted that "the district court's reduction of the prison term in recognition of those hardships [caused by deportation] does not eliminate the hardships or make the effects less harsh; rather, it advances the day when deportation will occur." *Restrepo*, 999 F.2d at 647.[3] Now, after *Booker*, we reaffirm the reasoning of *Restrepo* and apply it to Wills's non-Guidelines sentence, which was partly based on the purported "additional punishment" of deportation.

### 2. Deportation and Protection of the Public

*Restrepo*, as just noted, stated that deportation was not a proper ground for a downward departure because deportation should not be treated as additional punishment, but this Court's opinion did not address deportation with a view to protection of the public under § 3553(a)(2)(C). Indeed, we have not previously addressed the latter question.[4] On this issue, we note that even assuming that the "public" protected under § 3553(a)(2)(C) is only the American public, see *Small v. United States*, 544 U.S. 385, 388, 125 S.Ct. 1752, 161 L.Ed.2d 651 (2005) (remarking on the "commonsense notion that Congress gen-

---

**3.** As discussed below, the court observed that the defendant may alternatively *prefer* to be deported, in which case it also cannot be viewed as an additional punishment. *Restrepo*, 999 F.2d at 647.

**4.** See, e.g., *United States v. Ministro–Tapia*, 470 F.3d 137 (2d Cir.2006) (affirming a sentence that was based in part on the defendant's impending post-imprisonment deportation without addressing the deportation issue in a case in which neither party appealed the reliance upon deportation).

erally legislates with domestic concerns in mind" (quoting *Smith v. United States*, 507 U.S. 197, 205 n. 5, 113 S.Ct. 1178, 122 L.Ed.2d 548 (1993))), criminal conduct committed abroad is capable of harming Americans. For example, street violence against U.S. tourists and the cross-border effects of drug smuggling initiated by deportees may injure U.S. citizens. There is also a risk of illegal reentry, which, if realized, would further undermine protection of the public in this country. Indeed, some defendants subject to deportation will have just been convicted of illegal reentry. See, e.g., *United States v. Jimenez–Beltre*, 440 F.3d 514, 520 (1st Cir.), cert. denied, No. 06–5727, 2007 WL 36306 (U.S. Jan.8, 2007) (district court should not have considered defendant's deportation in imposing a non-Guidelines sentence in part because defendant had been convicted of reentry after deportation).

■ In addition, a sentencing scheme in which future deportation may lead to diminished sentences would weaken the deterrent effect of punishment. Some potential criminals may consider deportation preferable to imprisonment and would therefore not be as deterred from committing future crimes if they thought they would be deported rather than serve all or part of what should be their appropriate prison term. See generally *Restrepo*, 999 F.2d at 647 (acknowledging that some defendants will seek and desire deportation). The potential increase in crimes due to a decrease in deterrence would detract from the Congressional goal of protecting the public. *Booker* reinforces our view that deportation is not ordinarily an appropriate consideration under § 3553(a)(2)(C). In addition to holding that the Sentencing Guidelines must be advisory, not mandatory, the Court in *Booker* sought to increase individualization in sentencing. See *Booker*, 543 U.S. at 264–65, 125 S.Ct. 738

("Congress' preferred direction" is to "avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary."). This Court has confirmed that "the focus of the *Booker* remedy opinion is on allowing district judges the flexibility to tailor sentences for each individual defendant against the backdrop of the Guidelines scheme as approved by Congress." *United States v. Castillo*, 460 F.3d 337, 355 (2d Cir.2006). In contrast to legislatures, which define crimes and fix penalties, "judges, who deal with individual cases and controversies, impose particularized sentences on a specific defendant." *Id.* at 356; see also *Crosby*, 397 F.3d at 113–14 (2d Cir.2005) (expressing the hope that after *Booker* judges of the Circuit will be able to "achiev[e] somewhat more individualized justice.")

In 2005, approximately 37% of defendants convicted in federal court were non-U.S. citizens. 2005 United States Sentencing Commission Annual Report 22. We recognize that the number of non-U.S. citizen offenders is not necessarily equal to the number of deportable offenders, and that the effect of deportation on sentences will vary given district judges' discretion to assess the weight to accord to each of the § 3553(a) factors. Nevertheless, we think that the approach of the district judge in this case—treating the mere application of immigration law as the basis for a non-Guidelines sentence— flouts the goal of individualized justice by improperly, and automatically, grouping a large percentage of defendants together to receive the same general sentencing treatment even in the absence of a Congressional directive to treat this group differently from others. See generally *Restrepo*, 999 F.2d at 647("[W]e have seen no indication that Congress … or the Sentencing Commission … considered the

interplay between deportability and sentencing provisions.").

■ We have recently stated that "a non-Guidelines sentence that rests primarily upon factors that are not unique or personal to a particular defendant, but instead reflects attributes common to all defendants" should therefore be viewed "as inherently suspect." *Rattoballi*, 452 F.3d at 133. We believe that a non-Guidelines sentence that purportedly rests on the judge's prediction that a defendant will be deported, a factor applicable to a wide class of criminal defendants, should be treated in the same way. The district judge's oral statement of reasons (and his subsequent written statement of reasons as well) gives no indication that anything but the bare fact of deportation was considered. It may be that a sentencing judge can consider deportation when he or she identifies, with some particularity, why a specific defendant is certain to be deported and why deportation, in light of that defendant's individual circumstances, will serve to protect the public. Because deportation may not be viewed as additional punishment and the district court noted only the bare fact of deportation in its statement of reasons, the district court erred as a matter of law in factoring into Wills's sentence his likely deportation after serving his prison term.

### B. Co–Defendant Disparity

■ The government also argues that the district court erred by considering co-defendant disparity rather than disparity among defendants nationwide pursuant to 18 U.S.C. § 3553(a)(6).

This Court has noted that the Sentencing Reform Act of 1984, "whence the language in § 3553(a)(6) comes," was intended to eliminate *national* disparity. *United States v. Fernandez*, 443 F.3d 19, 31 n. 9 (2d Cir.2006). We have also observed, however, that the plain language of § 3553(a)(6) does not on its face restrict the kinds of disparity a court may consider. *Fernandez*, 443 F.3d at 31 n. 9. In other words, although it is unclear whether the provision allows for co-defendant sentence comparisons, the primary purpose of the provision was to reduce unwarranted sentence disparities nationwide.[5]

The judge compared Wills's sentence to those of his co-defendants pursuant to § 3553(a)(6). That provision requires a consideration of "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* In the judge's analysis under § 3553(a)(6), however, he noted only differences, not similarities, between Wills and his co-defendants. Wills was convicted of being a leader of the conspiracy, but his co-defendants were not; Wills did not have a record of cooperation with the prosecution, but his co-defendants did. The judge provided no explanation as to why these differences did not merit the sentencing differentials advised by the Guidelines; nor did he explain why similarities between

---

5. Since *Booker*, circuit courts have taken diverse positions on whether the phrase "unwarranted sentence disparities" in § 3553(a)(6) permits consideration of co-defendants' sentences. See, e.g., *United States v. Davis*, 437 F.3d 989, 997, (10th Cir.) cert. denied — U.S. ——, 126 S.Ct. 1935, 164 L.Ed.2d 682 (2006) (co-defendant comparisons not permitted); *United States v. Walker*, 439 F.3d 890, 893–94 (8th Cir.2006) (assum-

ing without extensive discussion that § 3553(a)(6) *requires* consideration of co-defendant disparity); *United States v. Parker*, 462 F.3d 273, 277 (3d Cir.2006), cert. denied — U.S. ——, 127 S.Ct. 462, 166 L.Ed.2d 329 (2006) (holding that a district court is not *required* to consider sentencing disparity among co-defendants, but is *permitted* to do so in certain circumstances and in a particular manner).

Wills's criminal conduct or history and characteristics and those of his co-defendants warrant a narrower gap.

We do not, as a general matter, object to district courts' consideration of similarities and differences among co-defendants when imposing a sentence. In this respect, we agree with the Third Circuit's approach to co-defendant sentence disparities set forth in *United States v. Parker*, 462 F.3d 273 (3d Cir.), cert. denied, —— U.S. ——, 127 S.Ct. 462, 166 L.Ed.2d 329 (2006). The Third Circuit determined that "although § 3553(a) does not require district courts to consider sentencing disparity among co-defendants, it also does not prohibit them from doing so. So long as factors considered by the sentencing court are not inconsistent with those listed in § 3553(a) and are logically applied to the defendant's circumstances, we accord deference to the court's 'broad discretion in imposing a sentence within a statutory range.'" *Id.* at 277 (quoting *Booker*, 543 U.S. at 233, 125 S.Ct. 738).

Indeed, 18 U.S.C. § 3553(a)(1) provides a natural and necessary basis for placing the actions of an individual defendant in the broader context of the crime he or she committed. Section 3553(a)(1) requires consideration of "the nature and circumstances of the offense" and "the history and characteristics of the defendant." Under the advisory Guidelines scheme explicated in *Booker*, it is appropriate for a district court, relying on its unique knowledge of the totality of circumstances of a crime and its participants, to impose a sentence that would better reflect the *extent* to *which* the participants in a crime are similarly (or dissimilarly) situated and tailor the sentences accordingly. It would be anomalous to grant a district court "broad discretion in imposing a sentence within a statutory range," *Booker*, 543 U.S. at 233, 125 S.Ct. 738, but deny the court

the ability to consider the sentence in its complete relevant context.

The district judge erred in the instant case not because he considered Wills's sentence in relation to those of his co-defendants, but because he provided no assessment of how Wills was similarly situated to his co-defendants and why that would matter in light of the differences. Rather, the judge pointed only to facts showing that Wills was not convicted of conduct similar to that of his co-defendants and otherwise was not similarly situated.

The district court explicitly invoked § 3553(a)(6), the primary purpose of which was to minimize nationwide disparities, in reducing Wills's sentence in light of his co-defendants' sentences. It is not entirely clear what exactly it means for a district judge to consider the effects of an individual defendant's sentence on nationwide disparities. On the one hand, in order to avoid redundancy with § 3553(a)(4), it must require something different than mere consideration of the Guidelines, which are the statute's primary vehicle for reducing nationwide sentence disparities. On the other hand, it cannot be that a judge must act as social scientist and assess nationwide trends in sentencing with each new defendant—in effect, intuiting Guidelines revisions on an interim basis as a proxy for the Sentencing Commission. We think the mandate to take into account nationwide disparities under § 3553(a)(6), as distinct from the need to give due weight to the Guidelines under § 3553(a)(4), is modest. Even in fulfilling their primary duty of rendering just sentences with an eye toward the particular circumstances before them, judges must be mindful of the general goal, however elusive, of national consistency. This Court does not require of the district judge "robotic incantations" to prove that the judge conducted the analysis required

under § 3553(a). *Fernandez*, 443 F.3d at 30. However, in light of the district court's comparison of Wills with dissimilar co-defendants in the course of invoking § 3553(a)(6), we think the record indicates a "misunderstanding" of § 3553(a)(6). *United States v. Fleming*, 397 F.3d 95, 100 (2d Cir.2005).

This legal error partially led to Wills's sentence. Therefore Wills's sentence is not "reasonable." [6]

## III. CONCLUSION

We hold that the sentence imposed was unreasonable because it was based on legal errors. We vacate the sentence and remand the case to the district court for resentencing in light of the discussion above. Specifically, in addition to the other requisite considerations under § 3553(a), the district court is instructed to sentence Wills (1) without regard to his potential future deportation unless the court finds, with some particularity, that Wills is certain to be deported and that deportation, in view of Wills's individual circumstances, will serve to protect the public; and (2) with consideration of why any putative similarities between Wills and his co-defendants—if the judge finds these similarities relevant under § 3553(a)(1)— warrant a narrower gap in sentences, while mindful of the national goal of avoiding unwarranted sentence disparities.

---

6. Because we hold that the sentence is procedurally unreasonable, we do not reach the government's argument that if the two factors discussed in IIA and IIB above are removed from the analysis, Wills's sentence should be deemed unreasonable based on its length alone.