05-4416-cr (L)
United States v. Williams, Shuler

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————————————

August Term, 2006

(Argued: January 9, 2007, Supplemental Briefing: February 27, 2008
Decided: April 25, 2008)

Docket Nos.:  05-4416-cr(L); 05-6778-cr (con)

————————————

UNITED STATES OF AMERICA,

*Appellant*,

– v. –

BRIAN WILLIAMS, SAMUEL SHULER,

*Defendants-Appellees*.

————————————

Before:

CALABRESI AND CABRANES, *Circuit Judges,*
and KORMAN, *District Judge.*\*

————————————

Appeals from judgments of conviction entered in the United States District Court for the Southern District of New York by Judges McMahon and Brieant, sentencing the defendants to below-guidelines sentences.  The sentence imposed on Williams, principally 36 month's imprisonment,  was predicated primarily upon consideration of the sentence he would have received for a comparable drug offense if he had been prosecuted in New York State.  The subsequent sentence imposed on Shuler, principally 40 month's imprisonment,  was predicated solely on the desire to avoid undue disparity with the sentence imposed on Williams.

Vacated and Remanded.

————————————

DAVID B. MASSEY, Assistant United States Attorney (ROBIN L. BAKER, Robin L. Baker, *on the brief*), *for* Michael J. Garcia, United States Attorney for the Southern District of New York, New York, *for Appellant*.

MICHAEL F. KEESEE, Port Chester, New York, *for Defendant-Appellee Shuler*.

ROBERT A. CULP, Garrison, New York, *for Defendant-Appellee Williams*.

————————————

_____
\*    The Honorable Edward R. Korman, Senior United States District Judge for the Eastern District of New York, sitting by designation.

KORMAN, District Judge.

This is an appeal by the United States from judgments, which were entered in the United States District Court for the Southern District of New York, convicting the defendants Brian Williams and Samuel Shuler on their pleas of guilty to conspiracy to possess with the intent to distribute crack cocaine. The appeal challenges the sentences imposed on the defendants by Judges McMahon and Brieant. Judge McMahon sentenced Williams principally to a period of incarceration of 36 months, and Judge Brieant sentenced Shuler principally to a period of incarceration of 40 months. While the range prescribed by the Sentencing Guidelines is now 57 to 71 months, at the time the sentence was imposed it was 70 to 87 months. The manner in which the significantly lower sentences were justified provides the basis for the appeal.

**BACKGROUND**

Brian Williams and Samuel Shuler were engaged in the business of selling crack cocaine in the City of Yonkers, New York. The two were arrested on September 1, 2004, after making a sale to one of their patrons who approached the vehicle from which they engaged in the transaction. Shortly after they drove away from the scene, their car was stopped by two Yonkers Police Department Officers. Shuler attempted to flee, but was apprehended and then searched. One of the officers recovered from Shuler's pants pocket two bags containing crack cocaine and a scale with cocaine residue on it. The officers then searched the car and recovered from the front seat a box of clear plastic sandwich bags,

including one that contained crack cocaine. Williams and Shuler were then arrested. A subsequent search resulted in recovery of approximately $550 in cash from Williams and $56 in cash from Shuler, as well as clear plastic bags containing crack cocaine from each of Williams's shoes, and from the front area of Williams's pants. The substances contained in the two bags recovered from Shuler's pockets, the front seat of the car, and the bags recovered from Williams's shoes tested positive for crack cocaine and weighed 92.34 grams in total. The residue found on the scale recovered from Shuler's pocket tested positive for cocaine.

After their arrest, Williams and Shuler were charged in Yonkers City Court with criminal possession of a controlled substance in excess of 2 grams. Nine days later, they were both charged in a federal complaint with conspiracy to possess with intent to distribute 50 grams or more of crack cocaine. This was ultimately the charge to which they both pled guilty and for which, after a number of adjustments that we pass over, the Sentencing Guidelines called for a sentence of 70 to 87 months. While they both pled guilty to the same offense, they were charged in separate one-count informations, they pled guilty at different times, and the cases were assigned for sentencing to different judges in the United States District Court for the Southern District of New York. Williams was sentenced by Judge McMahon, Shuler by Judge Brieant.

We focus our discussion principally on the sentencing proceeding of Williams, who was sentenced first, because the sentence imposed upon him provided the predicate for the

sentence imposed on Shuler. Judge McMahon declined to consider a sentence within the range prescribed in the Sentencing Guidelines because of her views, which were repeatedly expressed at the sentencing proceeding, that the sentence she imposed should be comparable to the sentence Williams would have received had his case not been turned over to federal prosecutors.

The principal point of reference for determining the sentence Williams would have received had the case been prosecuted in Westchester County was *not* the sentencing scheme prescribed by the New York Penal Law. When the offense was committed, it was a Class A-II felony, N.Y. Penal Law § 220.18, punishable by a minimum sentence of "not . . . less than three years nor more than eight years four months," N.Y. Penal Law § 70.00(3)(a)(ii). Section 220.18 was amended shortly after the arrest of Williams to increase the drug quantity associated with a class A-II felony to 4 ounces or 112 grams. This change, in effect, reduced the offense with which Williams had been charged to a Class B felony punishable by a maximum sentence of 25 years and a minimum sentence of "not less than one year nor more than one-third of the maximum term imposed," N.Y. Penal Law § 70.00(2)(b), 3(b). This sentencing range reflected the judgment of the New York State Legislature that a sentencing judge should be afforded a wide degree of discretion in fixing an appropriate sentence. Indeed, the sentencing range prescribed by the Sentencing Guidelines for crack cocaine could have fit within the sentence prescribed for a Class B felony.

Because the Penal Law did not provide a sufficient basis for the argument that a downward departure was necessary to avoid a disparity between the Sentencing Guidelines and the New York sentencing scheme, Williams relied on the plea bargaining policy of the Westchester County District Attorney – one of the sixty-two independently elected district attorneys in New York who are vested with the discretion to set their prosecutorial and plea bargaining policies. *See Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988) ("It is well established in New York that the district attorney, and the district attorney alone, should decide when and in what manner to prosecute a suspected offender.").

Specifically, based on his discussions with the District Attorney's Office, and on his own experience, Williams's attorney advised the district judge that, notwithstanding the sentence prescribed for Class B felonies in New York,

> the plea policy in this matter would have been [that] this defendant would very likely have been offered, considering his lack of prior criminal history, a Class C felony, which, on a . . . plea conference and as a first[-time] offender, his sentence would have been a minimum of one year and a maximum of five and a half years.

Indeed, Williams's attorney continued, "as a Class C, first-time offender in a drug case, he would actually have been eligible . . . [for a] six month split sentence."

After the forgoing presentation by Williams's attorney, the district judge and the Assistant United States Attorney engaged in following colloquy, before she even addressed other relevant sentencing factors:

> MR. MASSEY: Well, your Honor, here the defendant is subject to federal law. He pled in federal court.

-5-

THE COURT: Everybody's subject to federal law, Mr. Massey. It's just a random event. Whether you get pulled into federal court or not tends to depend where you get arrested. Your office knows perfectly well how I feel about these cases.

MR. MASSEY: Your Honor, we have the dual system and –

THE COURT: Indeed we do.

MR. MASSEY: – the defendant is not being treated differently than any other federal defendant.

THE COURT: Well, I'm not going to treat him differently than any other New York defendant. Okay? That's how I'm going to treat him.

MR. MASSEY: Okay.

THE COURT: My personal matter of policy. A case that's obviously a state drug case where there's no crack cocaine distinction, I don't have to worry about that baloney, where I have, in effect, a first[-time] offender. Where there's no logical reason why this is here and not next door.

Notwithstanding her rejection of the Sentencing Guidelines at the threshold of the proceedings, the district judge proceeded to follow the usual format of a sentencing proceeding. She calculated the appropriate range, and she referred to factors set out in 18 U.S.C. § 3553(a) (2000). Even while engaging in this process, however, she made repeated reference to her view that the Sentencing Guidelines were excessive because "the nature and circumstances of the offense are not peculiarly federal." In concluding her analysis of the appropriate sentence, she stated:

I have taken the guidelines into account. As I say, I believe they are excessive, and I have taken into account the need to avoid unwarranted disparities among defendants with similar records who have committed similar offenses and, in

-6-

this regard, unwarranted in my mind is unwarranted in the neighborhood. And unwarranted in the neighborhood is unwarranted in this part of the world where these crimes are routinely dealt with in the state courts under a different guideline system that, because it does not incorporate a crack-cocaine distinction as a significant – carries a significantly lesser penalty for a first offender for this sort of sentence. So, as far as I am concerned, I am dealing with this situation in a way that eliminates unwarranted disparities, that is, between Mr. Williams and the guy next door, or the next community, whose perfectly similar crime is not federalized.

The 36 months sentence she then imposed was within the range that Williams's attorney suggested the case would have been disposed of by a plea in Westchester County.

A sentence significantly below the range prescribed by the Sentencing Guidelines was imposed on Samuel Shuler, although for different reasons. Judge Brieant, who sentenced him, explicitly stated that he had originally intended to impose a sentence of 70 months, which was recommended by the Probation Department. Indeed, unlike Williams, Shuler had stipulated that the 70 to 87 month range prescribed by the Sentencing Guidelines "is appropriate and reasonable and that the defense will not argue for a sentence outside of that range." Nevertheless, because of the sentence imposed upon Williams, Judge Brieant concluded that such a sentence "might create an undue disparity between persons who were engaged in the same misconduct together." Thus, "without necessarily agreeing or disagreeing with whether the sentence imposed upon Williams was a proper sentence or whether the reasons given for the sentence were proper," Judge Brieant imposed a sentence principally of 40 months.

**DISCUSSION**

We review a district court's sentence for "reasonableness," which is defined not only by the length of the sentence, but also by the process the district court used to determine the sentence. An appellate court must first ascertain whether the sentence was administered without procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range." *Gall v. United States*, __ U.S. __, 128 S.Ct. 586, 597 (2007). "If a sentencing judge committed a procedural error by selecting a sentence in violation of applicable law, and that error is not harmless and is properly preserved or available for review under plain error analysis, the sentence will not be found reasonable." *United States v. Crosby*, 397 F.3d 103, 114 (2d Cir. 2005) (citation omitted).

With regard to the substantive reasonableness of a sentence, the Supreme Court "made it pellucidly clear that the familiar abuse-of-discretion standard of review now applies to appellate review of sentencing decisions." *Gall*, 128 S.Ct. at 594 (citing *United States v. Booker*, 543 U.S. 220, 260-62 (2005)). We, however, vacate the sentence imposed on Williams without reaching the issue of whether the sentence imposed was substantively reasonable under 18 U.S.C. § 3553(a). We do this because we conclude that the district judge committed procedural error by relying improperly on the plea policy of the Westchester

County District Attorney and on an assumption as to the sentence that would have been imposed by a judge in the City of Yonkers.

The Supreme Court recently set out the proper procedure and order of consideration a sentencing judge must follow: "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and *to secure nationwide consistency*, the Guidelines should be the starting point and the initial benchmark." *Gall*, 128 S.Ct. at 596 (citation omitted) (emphasis added). Next, the sentencing judge should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented." *Id.* at 596-97 (citation and footnote omitted).

Instead of looking to the Sentencing Guidelines as "the starting point and the initial benchmark" in determining an appropriate sentence – a requirement necessary "to secure nationwide consistency," *id.* at 596 – the initial benchmark the district judge looked to was the sentence for which the case could have been plea-bargained in Westchester County. The need for nationwide consistency was subordinated to "the need to avoid unwarranted disparities among defendants with similar records who have committed similar offenses . . . in the neighborhood . . . where these crimes are routinely dealt with in state courts under a different guideline system that . . . carries a significantly lesser penalty for a first offender for this sort of [offense]."

The displacement of the Sentencing Guidelines at the threshold, because of a "personal policy" to conform the sentence to one that would have been imposed in a proceeding in the City of Yonkers, cannot be reconciled with 18 U.S.C. § 3553(a), which provides that "[t]he court, in determining the particular sentence to be imposed, shall consider" the Sentencing Guidelines. 18 U.S.C. § 3553(a)(4). "The fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 128 S. Ct. at 596 n.6.

The failure of the district judge to follow this explicit directive cannot be justified by her expressed desire to "avoid unwarranted disparities among defendants with similar records who have committed similar offenses," apparently paraphrasing, without citing, § 3553(a)(6), which requires the district court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Congress adopted § 3553(a)(6) "to eliminate unwarranted disparities nationwide. An applicable guideline range . . . is the same range applicable throughout the country for all offenders with the same combination of offense conduct and prior record." *United States v. Joyner*, 924 F.2d 454, 460 (2d Cir. 1991); *see also United States v. Tejeda*, 146 F.3d 84, 87 (2d Cir. 1998) (observing that the purpose of Congress in enacting § 3553(a)(6) was "eliminating disparity on a *national* level").

This is not the only concern we have. Reliance on the plea bargaining policy of one of sixty-two independently elected district attorneys, rather than the uniform sentencing scheme prescribed by the New York State Legislature, may run the risk of increasing sentencing disparities even within each of the four federal judicial districts in New York State. Such plea-bargaining policies also often reflect the need to conserve limited law enforcement resources. This inevitably results in sentences that are less than what would otherwise be deemed reasonable. Precisely because Congress and the Executive Branch have chosen to supplement local resources, it would be anomalous to permit plea-bargaining practices influenced by such limited resources to affect significantly the sentence that would otherwise be appropriate under § 3553(a).

Finally, we share the concern voiced in *United States v. Clark*, 434 F.3d 684 (4th Cir. 2006), as to the propriety of relying on a representation – based on hearsay – as to a plea and sentence that could have been obtained in state court. *Id.* at 688 n.2. The Fourth Circuit there observed that "[i]t would be unreasonable to depart from the state guidelines on the basis of unsworn hearsay testimony, especially when the testimony was of marginal relevance because it was based on only the 'general facts' of the case, rather than the precise facts." *Id.* This consideration is present in the instant case, notwithstanding defense counsel's representation as to the plea that could "very likely" have been obtained by a generic first-time offender, because Williams was a "first-time offender" only in the sense that he had not been caught on previous occasions when he admittedly sold crack cocaine.

We now turn briefly to the sentence Judge Brieant imposed on Samuel Shuler solely to avoid an undue disparity with the sentence imposed on Williams. The sentence must be vacated, if only because the sentence imposed on Williams must be vacated. We do not fault Judge Brieant for his endeavor to avoid "undue disparity between persons who are engaged in the same misconduct together." Indeed, we recently agreed with a holding of the Third Circuit that, "although § 3553(a) does not require district courts to consider sentencing disparity among co-defendants, it also does not prohibit them from doing so. So long as factors considered by the sentencing court are not inconsistent with those listed in § 3553(a) and are logically applied to the defendant's circumstances, we accord deference to the court's broad discretion in imposing a sentence within a statutory range." *United States v. Wills*, 476 F.3d 103, 110 (quoting *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006), *cert. denied*, __ U.S. __, 127 S. Ct. 462 (2006)) (internal quotation marks omitted). As the opinion in *Wills* continued:

> Under the advisory Guidelines scheme explicated in *Booker*, it is appropriate for a district court, relying on its unique knowledge of the totality of circumstances of a crime and its participants, to impose a sentence that would better reflect the *extent* to *which* the participants in a crime are similarly (or dissimilarly) situated and tailor the sentences accordingly. It would be anomalous to grant a district court "broad discretion in imposing a sentence within a statutory range," *Booker*, 543 U.S. at 233, 125 S. Ct. 738, but deny the court the ability to consider the sentence in its complete relevant context.

*Id.* at 110.

Nevertheless, even though Judge Brieant may have had the discretion to consider any disparities that would result from his imposition of the sentence substantially higher than the

-12-

one imposed on Williams, we question whether it was appropriate for Judge Brieant to have hewed so closely to the sentence imposed on Williams without making his own assessment of an appropriate sentence and exercising the sound judgment for which he is held in such high regard.

We also question the case assignment practice, which created the predicament that Judge Brieant faced. While we are reluctant to micro-manage the rules by which cases are assigned in the district court, it seems difficult on any score to justify the assignment of the Williams and Shuler cases to different judges. On remand, we suggest that both cases be assigned to the same judge – a reassignment that can be accomplished with the consent of the able district judges in a manner consistent with the S.D.N.Y. Rules for the Division of Business Among District Judges, Rule 16. This seems to us a more appropriate way to avoid seemingly arbitrary disparities in the sentences imposed on similarly situated co-defendants and to avoid unnecessary duplication of judicial effort.

We add these words regarding the proceedings on remand. During the sentencing proceeding of Williams, Judge McMahon alluded to "the completely . . . unwarranted crack [versus powder] cocaine distinction that we have in federal law." Indeed, her comments at sentencing suggest that the real reason she may have chosen to look to the sentence that would have been imposed in New York was her understandable desire to ameliorate this disparity. In *Kimbrough v. United States*, __U.S. __, 128 S. Ct. 558 (2007), the Supreme Court held that "it would not be an abuse of discretion for a district court to conclude when

sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." *Id.* at 575. Subsequently, in *United States v. Regalado*, 518 F.3d 143, 149 (2d Cir. Mar. 4, 2008), which involved a direct appeal from a pre-*Kimbrough* sentence, and "[w]here [the] defendant ha[d] not preserved the argument that the sentencing range for the crack cocaine offense fails to serve the objectives of sentencing under § 3553(a)," we held that a remand was required "to give the district court an opportunity to indicate whether it would have imposed a non-Guidelines sentence knowing that it had discretion to deviate from the Guidelines to serve those objectives." While we vacate the sentences here for other reasons, the sentencing judge or judges will have the discretion to consider the crack/cocaine disparity, which has now been narrowed by the Sentencing Commission, in imposing sentence.

## CONCLUSION

The judgments of conviction are **VACATED** and the cases are **REMANDED** for resentencing.