PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellant,*

v.

SYNINA LAVEL CLARK,
　　　　　*Defendant-Appellee.*

No. 05-4274

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CR-04-401)

Argued: October 28, 2005

Decided: January 12, 2006

Before LUTTIG, MOTZ, and KING, Circuit Judges.

Vacated and remanded by published opinion. Judge Luttig wrote the opinion. Judge Motz wrote a separate opinion concurring in the judgment. Judge King wrote a separate opinion concurring in the judgment.

## COUNSEL

**ARGUED:** Michael James Elston, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellant. Matthew William Greene, SMITH & GREENE, P.L.L.C., Fairfax, Virginia, for Appellee. **ON BRIEF:** Paul J. McNulty, United States Attorney, Alexandria, Virginia, for Appellant.

**OPINION**

LUTTIG, Circuit Judge:

Defendant-appellee, Synina Clark, was convicted in federal court for the federal crime of conspiring to distribute crack cocaine, which crime she committed in Virginia. The United States Sentencing Guidelines provided that she be sentenced to between 46 and 57 months. The district court sentenced Clark to eight months instead, according "great weight" to the fact that Clark would have received a much lower sentence for a comparable state crime in Virginia.

Because the district court either failed to consider or considered improperly the need to avoid unwarranted sentencing disparities among federal defendants as required by 18 U.S.C. § 3553(a)(6), the sentence imposed by the district court is vacated and the case is remanded for resentencing.

I.

Defendant Clark pled guilty to conspiring to distribute crack cocaine in violation of 21 U.S.C. § 846. J.A. 107. In a sentencing proceeding on February 4, 2005, the district court determined that the Sentencing Guidelines range for Clark's offense was 46 to 57 months. *Id.* at 96-97. However, rather than sentence Clark to a term of imprisonment within this range, the district court requested supplemental briefing on what the approximate sentencing range for Clark would have been if she had been convicted of a comparable state crime in Virginia. *Id.* at 39-42. In its supplemental briefing, the government claimed that the state sentencing range would have been 36 to 49 months. *Id.* at 77. For her part, Clark agreed that this would have been the range under the Commonwealth's guidelines, *id.* at 60, but contended that she could have credibly argued in state court that she should be incarcerated for only 6 to 12 months, and have the remainder of her sentence suspended, *id.* at 59.

At the second sentencing hearing, the district court, in addition to considering the conflicting positions in the supplemental briefs, took unsworn testimony from the federal probation officer in which the

officer said that an unidentified state probation officer had estimated, based on only the "general facts" of the case, that the defendant would have received a minimum of six months' incarceration. *See id.* at 97-98. In the end, the district court gave "great weight to what the [federal] probation officer ha[d] found from one of her state colleagues," *id.* at 100, and sentenced the defendant to eight months in prison, *id.* at 102. The instant appeal followed.

## II.

Although *United States* v. *Booker*, 125 S. Ct. 738 (2005), rendered the Federal Sentencing Guidelines advisory, the Supreme Court set forth in *Booker* a number of requirements with which federal district courts must still comply when sentencing. We have described those steps as follows:

> In the wake of *Booker* . . . the discretion of a sentencing court is no longer bound by the range prescribed by the guidelines. Nevertheless, a sentencing court is still required to "consult [the] Guidelines and take them into account when sentencing." Consistent with the remedial scheme set forth in *Booker*, a district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court *shall consider* that range as well as other relevant factors set forth in the guidelines *and those factors set forth in [18 U.S.C.] § 3553(a)* before imposing the sentence. If the court imposes a sentence outside the guideline range, it should explain its reasons for doing so.

*United States* v. *Hughes*, 401 F.3d 540, 546 (4th Cir. 2005) (emphases added) (citations omitted) (citing *Booker*, 125 S. Ct. at 764-67). Of relevance to this case, district courts must consider, pursuant to 18 U.S.C. § 3553(a)(6), "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

The question before us is whether the district court complied with the requirement of section 3553(a)(6) when it sentenced Clark.

If the district court considered the need to avoid unwarranted sentencing disparities, it did so in the following statement from the bench:

> All right. The goal behind federal sentencing guidelines — and it's a very good goal — is to try to reduce sentence disparity. Now, that's a great goal. The reality that I've addressed over years from the bench is that it creates all kinds — the goal is wonderful, but how you get to that goal is the problem, and the federal sentencing guidelines in my view really have not achieved that goal.

> And so now that we are working in an advisory environment, while I think the guidelines are very helpful because it gives the Court one view of a certain standard, in areas such as this, where there's concurrent jurisdiction, I think it is absolutely appropriate for the Court to also look at what a similar type of — what would happen to a defendant had the defendant been prosecuted in the state system, and in this case, that analysis is particularly useful because, in fact, this case apparently began as a state case.

J.A. 98-99. From this brief statement, it is unclear to us whether the district court considered at all the need to avoid sentencing disparities, as required under section 3553(a)(6); whether it considered this factor but mistakenly believed Congress' concern to be with avoidance of sentencing disparities between federal and state defendants; or whether it considered the need to avoid sentencing disparities among federal defendants but concluded that this need should yield to an interest in avoiding sentencing disparities between federal and state defendants. On any of these understandings of the district court's statement, it erred under section 3553(a)(6).[1]

---

[1]Clark contends that we ought to review the district court's sentence for plain error because the government failed to object at the second sentencing hearing to the district court's consideration of state sentencing practices. We conclude, however, that the government's objection in its supplemental brief that "the government still believes that the defendant should be sentenced according to the U.S. Sentencing Guidelines in order to avoid sentencing disparities with others who committed the same crime and have similar backgrounds," J.A. 80, was sufficient to preserve its claim for appellate review.

We think that the better understanding of the district court's statement is that it did not consider the need to avoid sentencing disparities at all. Believing itself free to do so because the Sentencing Guidelines are no longer mandatory, the district court simply resorted to state law for additional insight as to what would constitute a reasonable sentence under the circumstances, wholly without regard for whether the sentence thereby imposed would result in sentencing disparities.

First, the district court appeared resigned to its own belief that the Guidelines had not, and could not, eliminate sentencing disparities. Second, the court did not utter a single word about how the sentence it imposed would or might avoid sentencing disparities among federal defendants (or, for that matter, even between federal and state defendants). And finally, the result of according "great weight" to the sentences that defendants would receive in the state courts in which their respective crimes were committed (if other district courts were to follow suit and their reasoning to be accepted by this court) would be a sentencing regime that actually produced, rather than avoided, sentencing disparities among federal defendants, because federal defendants who engaged in the same criminal conduct would receive different sentences merely because they committed their federal crimes in different states.

Even were we to understand the district court as having considered the need to avoid unwarranted sentencing disparities, however, we would still be obliged to set aside its judgment of sentence for its failure to comply with the requirements of section 3553(a)(6). For if the district court were understood as having considered avoidance of sentencing disparities, it would be most plausible to understand the court as having incorrectly believed that the disparities sought to be avoided by section 3553(a)(6) are those between state and federal defendants. *See*, *e.g.*, J.A. 98 (noting the "disparate impact that a sentence has [depending on] whether a person goes into the federal system or the state system"); *id.* (stating that the disparate impact in the area of drug offenses "is particularly problematic because there's absolutely concurrent jurisdiction over the exact same activity"). These disparities are not those that section 3553(a)(6) seeks to avoid. *The sole concern of section 3553(a)(6) is with sentencing disparities among federal defendants. Cf.* 28 U.S.C. § 991(b)(1)(B) (reciting that one of the statutory purposes of the United States Sentencing Commission is "to

establish sentencing policies and practices for the Federal criminal justice system that . . . avoid[ ] unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct . . . ."). Indeed, concurrent jurisdiction in federal and state fora contemplates and accepts that there may well be different sentences imposed for similar or identical offenses by the two different justice systems. The Federal Sentencing Guidelines did not seek to eliminate these sentencing disparities that inhere in a scheme of concurrent jurisdiction. The Guidelines sought to avoid only the unwarranted disparities that existed in the federal criminal justice system, that system for which the Guidelines are governing law.

Nor could the sentence imposed by the district court stand if the district court considered the need to avoid sentencing disparities among federal defendants but concluded that this need should yield to an interest in avoiding sentencing disparities between federal and state defendants. Creating sentencing disparities among federal defendants for no other reason than to eliminate the accepted disparities that inhere in the parallel federal and state systems of justice is unreasonable. *See Booker*, 125 S. Ct. at 766 ("[The section 3553(a)] factors . . . will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable.").

Though in the vast majority of cases the creation of disparities among federal defendants that results from the consideration of state sentencing practices will similarly render the sentence unreasonable in light of section 3553(a)(6), the consideration of state sentencing practices is not necessarily impermissible per se. There may be unusual cases when, despite the disparities among federal defendants created by the consideration of state sentencing practices, the sentence imposed will yet be reasonable in light of all of the section 3553(a) factors, because state sentencing practices will inform the proper consideration of factors other than section 3553(a)(6).[2] Because this is not

---

[2]But even if consideration of state sentencing practices were ever justified, consideration of them in the way they were considered by the district court would be unreasonable. The district court relied on the federal probation officer's unsworn statement that an unidentified local proba-

one of those unusual cases, however, we conclude that the district court's consideration of state sentencing practices renders Clark's sentence unreasonable in light of section 3553(a).

For the reasons recited, the judgment of sentence is vacated and the case is remanded for resentencing pursuant to the United States Sentencing Guidelines, as modified by the Supreme Court in *Booker*.

*VACATED AND REMANDED*

DIANA GRIBBON MOTZ, Circuit Judge, concurring in the judgment:

I agree that the sentence in this case must be vacated and the case remanded for resentencing. I write separately to emphasize that, given the substantial, albeit not unchecked, discretion federal district courts enjoy after *United States v. Booker*, 125 S. Ct. 738 (2005), they can take into account state sentencing practice in certain cases.

Federal law instructs district courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C.A. § 3553(a)(6) (West 2000). It seems to me that the fairest reading of this mandate, albeit not the only plausible reading, *see, e.g.*, *United States v. Lucania*, 379 F. Supp. 2d 288, 296-97 (E.D.N.Y. 2005), is that it generally bars federal courts from basing a sentence on consideration of state sentences. Congress established a Sentencing Commission and authorized detailed sentencing guidelines at least in part to eliminate unwarranted disparities in sentences among *federal* defendants. Permitting federal courts to consider an individual state's sentence for an analogous state crime would often cause disparities

---

tion officer, cognizant of only the "general facts," believed that the defendant would actually receive a minimum of six months, *see id*. at 97, when the state guidelines range was 36 to 49 months, *see id*. at 60, 77. It would be unreasonable to depart from the state guidelines on the basis of unsworn hearsay testimony, especially when that testimony was of marginal relevance because it was based on only the "general facts" of the case, rather than the precise facts.

among federal defendants convicted of the same crimes. Accordingly, in the usual case federal courts should not consider state practice in imposing sentences.

There are, however, some cases in which consideration of state sentences will not conflict with § 3553(a)(6)'s mandate to "avoid unwarranted sentence disparities" and may in fact help courts to apply correctly the other factors set forth in § 3553(a). One example is when a federal criminal statute incorporates state law. *See, e.g.*, 18 U.S.C.A. § 13(a) (West 2000) (assimilating state criminal law for land within federal jurisdiction); 18 U.S.C.A. § 1960(b)(1)(A) (West 2000) (defining the federal crime of operating "an unlicensed money trans-mitting business" as, *inter alia*, operating "without an appropriate money transmitting license in a State where such operation is punish-able as a misdemeanor or a felony under State law").

When the effect and reach of a federal statute depend on state law, consideration of the sentence mandated by state law seems entirely appropriate. We must not lose sight of the fact that avoidance of "un-warranted sentence disparities" is not the only command of § 3553(a). In that statute Congress also directs courts to assign sentences that "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment," and "afford adequate deterrence to crimi-nal conduct." 18 U.S.C.A. § 3553(a). Federal courts may well have difficulty evaluating the "seriousness" of a crime defined by state law without looking to see how the state punishes that behavior.

Section 3553(a)(6) does not, and should not, prohibit a district court from exercising its discretion to consider state sentences in cases in which Congress itself has decided that state law determines whether the activity at issue is punishable as a federal offense. Con-cerns about disparities among federal defendants are necessarily less-ened in such cases because federal law intentionally incorporates variations in state law. It would be unreasonable to hold in such cases that a federal court may not consider state sentencing practice.

In sum, § 3553(a)'s broad language indicates that district courts enjoy significant discretion in sentencing, provided, of course, that they devise reasonable sentences. Application of the § 3553(a) factors is neither a mechanical nor an automatic process — some factors may

weigh more heavily than others depending on the facts of an individual case. Although the sentence in this case did not comply with § 3553(a), we should not interpret § 3553(a)(6) so narrowly as to curtail a district court's discretion to strike a fair balance among the § 3553(a) factors. This discretion includes the ability, in a proper case, to consider state sentencing practice in this balance.

KING, Circuit Judge, concurring in the judgment:

Although I agree with the result reached by Judge Luttig, as well as his view that it was inappropriate for the district court, in sentencing Clark, to rely on the sentence she could have received in state court had she been prosecuted there, my analysis of this case is more aligned with that of Judge Motz. I write separately to emphasize my view that, apart from the sentencing court's improper and erroneous reliance on the sentence Clark could have received in state court, the considerations that informed its sentencing decision were entirely appropriate under 18 U.S.C. § 3553(a).

First, the court calculated and considered the applicable Guidelines range, as required under § 3553(a)(4). Second, the court appropriately weighed Clark's history and characteristics, emphasizing that Clark had no prior criminal history, that she had otherwise shown no propensity toward criminal activity, and that she probably would not have been involved in criminal activity but for her boyfriend. *See* § 3553(a)(1) (requiring court to consider history and characteristics of defendant). Third, and relatedly, the court observed that Clark had not engaged in criminal activity since her arrest in this case and had secured and maintained employment since that time, suggesting that there was little need to deter future criminal activity. *See* § 3553(a)(2)(C) (directing courts to consider the need for punishment "to protect the public from further crimes of the defendant"). Finally, the court considered "the need . . . to provide the defendant with needed educational . . . training" by requiring Clark to obtain a GED as a condition of her probation. § 3553(a)(2)(D).

Because of the sentencing court's erroneous reliance on the sentence Clark could have received had she been prosecuted in state court, we need not decide whether these other considerations would have rendered the sentence she received a reasonable one. It is note-

worthy, however, that other circuits have had occasion to sustain as reasonable sentences outside the Guidelines range that are based on similar considerations bearing on the § 3553(a) factors. *See, e.g.,* *United States v. Johnson*, 427 F.3d 423, 427-29 (7th Cir. 2005) (upholding as reasonable sentence of 236 months, where Guidelines prescribed sentencing range of 70 to 87 months, because of seriousness of crime and risk of recidivism); *United States v. Shannon*, 414 F.3d 921, 924 (8th Cir. 2005) (upholding as reasonable 58-month sentence, where Guidelines called for sentence of 6 to 12 months, because court properly considered defendant's extensive criminal record and incorrigibility); *United States v. Pizano*, 403 F.3d 991, 995-96 (8th Cir. 2005) (upholding as reasonable sentence of 18 months, where Guidelines called for minimum sentence of 120 months, because defendant assisted in other prosecutions, had no extensive criminal history, and expressed regret).

All that being said, I agree with what Judge Motz has written and I also concur in the judgment.