*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0408p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

No. 06-2099

OSCAR MALONE,

*Defendant-Appellee.*

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-80903—Avern Cohn, District Judge.

Argued: September 13, 2007

Decided and Filed: October 4, 2007

Before: SUTTON and McKEAGUE, Circuit Judges; FORESTER, District Judge.[*]

---

## COUNSEL

**ARGUED:** Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellant. Penny R. Beardslee, FEDERAL PUBLIC DEFENDERS OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellant. Penny R. Beardslee, FEDERAL PUBLIC DEFENDERS OFFICE, Detroit, Michigan, for Appellee.

---

## OPINION

---

McKEAGUE, Circuit Judge. In this Government appeal, it is argued that Appellee Oscar Malone's 24-month sentence, which represents a 27-month downward variance[1] from the Guidelines range of 51 to 63 months, is unreasonable. The Government argues, *inter alia*, that by considering the sentence the defendant would have received had he been convicted in state court, the district

---

[*] The Honorable Karl S. Forester, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

[1] Although the district court checked the box on its sentencing form indicating that the sentence was a "departure," it is apparent to us from its Memorandum on Sentencing—referring to the sentence as a "variance" and referencing the § 3553(a) factors—that the district court intended the 24-month sentence to be a variance. Thus, we review it as such.

court relied on an impermissible factor.  For the reasons stated below, we agree and hold that a district court's consideration of a defendant's possible state court sentence as part of its sentencing calculus is improper and renders the resulting sentence unreasonable.  Accordingly, we **VACATE** Malone's sentence and **REMAND** the case for resentencing.

## I.  BACKGROUND

On November 30, 2004, a federal grand jury indicted Malone on charges of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).  Malone proceeded to a jury trial where he was convicted of possession with intent to distribute marijuana and acquitted of the two firearms charges.

The Presentence Report ("PSR") calculated a base offense level of 8 for Malone, but ultimately arrived at an offense level of 17 after applying a career offender enhancement under United States Sentencing Guidelines ("U.S.S.G.") § 4B1.1.  The PSR recommended that Malone be treated as a career offender because he had twice been convicted of narcotics offenses in Michigan state court.  The PSR calculated a criminal history category of IV, eventually arriving at a criminal history category of VI because of Malone's career offender status. With the career offender enhancement, the Guidelines specified a range of 51 to 63 months imprisonment; absent the enhancement, the Guidelines range would have been 10 to 16 months.  However, the district court imposed a 24-month term of imprisonment, which represents a 27-month downward variance from the Guidelines range.

In sentencing Malone, the district court began by confirming that he was prosecuted in federal court under the Project Safe Neighborhoods initiative, which is a cooperative arrangement between the federal and state governments aimed primarily at the prosecution of firearms-related crimes.  The district court then stated, "[t]here's an irony in this because the reason he was brought here and prosecuted in federal court he was acquitted on.  Had he never been charged with the gun offense, he never would have been prosecuted in federal court." Transcript of Sentencing at 7.  The court then indicated its belief that the Government's interest in the prosecution was "frustrated" and that Malone's designation as a career offender "overstate[s] grossly" his prior convictions and the instant offense.  *Id*. at 8.

Aside from its oral pronouncement of sentencing and the filing of the standard sentencing form, the district court issued a separate Memorandum on Sentencing to further explain its reasons for the downward variance.  Therein, the court hypothesized that neither of Malone's two prior convictions resulted in incarceration because the state courts likely did not view them as serious offenses.  The district court continued by stating that Malone's acquittal on the firearms charges "mooted the reasons for the federal prosecution."  As such, the court noted that:

> In a sense, *the Court in this case acts as a Michigan State court* would in considering the sentence since that is where the case would be now that the jury acquitted the defendant of the firearm charge.  Given his prior encounters with the Michigan criminal justice system on substantially similar charges to the charge of conviction here, defendant very likely would have received a lower period of incarceration, possibly probation, thus the 24 month sentence provides adequate punishment.

Memorandum on Sentencing at 4 n.3 (emphasis added).  Believing that the district court erred by considering the sentence Malone would have received in state court, the Government filed a timely appeal alleging that the 24-month sentence is substantively unreasonable.  Additionally, the Government argues that the sentence is substantively unreasonable because the district court disregarded congressional policy regarding career offenders by refusing to sentence Malone "at or

near the maximum term authorized" as expressed in 28 U.S.C. § 994(h).  However, today we only address the district court's consideration of Malone's likely state court sentence because it is dispositive, and the district court's ability to disregard congressional policy statements in sentencing defendants is currently pending before the Supreme Court in *Kimbrough v. United States*, No. 06-6330 (oral argument Oct. 2, 2007).

## II.  DISCUSSION

In *United States v. Booker*, 543 U.S. 220, 245 (2005), the Supreme Court declared the once-mandatory United States Sentencing Guidelines to be advisory in nature.  The *Booker* Court further announced that the proper standard of appellate review for criminal sentencing appeals is reasonableness.  *Id*. at 260-62.  This reasonableness review is two-fold, requiring that a sentence be both procedurally and substantively reasonable.  *United States v. Davis*, 458 F.3d 491, 495 (6th Cir. 2006).  A sentence may be procedurally unreasonable if the district court "did not appreciate the non-mandatory nature of the guidelines, did not correctly calculate the sentencing range under the guidelines, or did not consider the factors set forth in § 3553(a)."  *Id*. (citations omitted).  A sentence may be substantively unreasonable when "the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Borho*, 485 F.3d 904, 908 (6th Cir. 2007).

Despite being categorized in our cases under the substantive reasonableness prong, consideration of an impermissible factor—it seems to us—more appropriately involves the procedural reasonableness prong; the challenge is more to the *process* by which the district court arrived at the given sentence than to the substantive aspect of the sentence (i.e., the relationship between the length of the sentence and the strength of the reasoning under § 3553(a)).  However, whether it is categorized as being procedural, substantive, or a combination of the two, it is clear that a "sentence based on an improper factor fails to achieve the purposes of § 3553(a) and may be unreasonable regardless of length."  *United States v. Williams*, 456 F.3d 1353, 1361 (11th Cir. 2006); *see also United States v. Funk*, 477 F.3d 421, 426 (6th Cir. 2007) (stating that a "district court will act unreasonably if it bases the sentence on impermissible factors" but failing to specify whether it ran afoul of the procedural or substantive unreasonableness prong).

In two recent opinions, this Court has vacated a defendant's sentence because of the district court's consideration of impermissible factors.  *Funk*, 477 F.3d at 426, 431; *United States v. Keller*, __ F.3d__, 2007 WL 2254442, at *1, *6-8 (6th Cir. 2007).  In *Funk*, this Court found the defendant's 150-month sentence unreasonable where the Guidelines range was 262 to 327 months because the variance was based on the district court's disagreement with Congress's determination that career offenders should receive harsher sentences.  *Funk*, 477 F.3d at 429.  According to *Funk*, such a policy disagreement does not constitute "a permissible factor upon which to base a sentencing determination."  *Id*.  Likewise, in *Keller* we vacated a defendant's sentence because on *Booker* remand the district court improperly considered the defendant's post-sentencing conduct in imposing a 115-month downward variance from the Guidelines range.  *Keller*, 2007 WL 2254442, at *6-8.

Although an issue of first impression in this Court, a number of our sister circuits have concluded that it is impermissible for a district court to consider as part of its sentencing calculus the sentence that a defendant likely would have received had he been prosecuted in state court. *See United States v. Mapp*, No. 05-80494, 2007 WL 485513, at *7 (E.D. Mich. Feb. 9, 2007) (explaining that this Court has yet to address whether a district court may consider a defendant's likely sentence had he been prosecuted in state court).  Looking to these other circuits, post-*Booker* the Third, Fourth, Seventh, Eighth, and Tenth circuits have uniformly found it improper for a district court to consider state court sentences for comparable crimes when fashioning a federal defendant's

sentence. *See United States v. Wurzinger*, 467 F.3d 649, 654 (7th Cir. 2006) (affirming district court's refusal to tailor the defendant's federal sentence to that which his co-conspirators received in state court); *United States v. Branson*, 463 F.3d 1110, 1112 (10th Cir. 2006) (reducing federal sentences in order to align them with state court sentences "would not serve the purposes of § 3553(a)(6), but, rather, would create disparities within the federal system . . ."); *United States v. Jeremiah*, 446 F.3d 805, 808 (8th Cir. 2006) (holding that district courts are "neither required nor permitted under § 3553(a)(6) to consider a potential federal/state sentencing disparity"); *United States v. Clark*, 434 F.3d 684, 686-87 (4th Cir. 2006) (federal-state disparity is irrelevant to federal sentencing decisions); *United States v. Dowdy*, 216 F. App'x 178, 181-82 (3d Cir. 2007) (concluding that § 3553(a)(6) does not permit a district court to consider the sentencing disparity between state and federal defendants convicted of similar crimes).

Likewise, prior to *Booker* the First and Ninth Circuits found it improper for a district court to tailor its sentences to those imposed by the state in which the court sits. *See United States v. Williams*, 282 F.3d 679, 682 (9th Cir. 2002) (reversing defendant's sentence where the district court considered the disparity between federal and state sentences because under such a practice "every federal sentence would become dependent upon the practice of the state within which the federal court sits"); *United States v. Snyder*, 136 F.3d 65, 70 (1st Cir. 1998) (finding that a district court may not consider the federal-state sentencing disparity because it would lead to disparities between the various federal districts).

Of the cases cited above, we find the Fourth Circuit's decision in *Clark* particularly instructive. In *Clark*, the district court imposed an 8-month sentence for conspiracy to distribute crack cocaine instead of one within the 46 to 57 month Guidelines range. *Clark*, 434 F.3d at 685. The district court reasoned that the variance was warranted because:

> I think it is absolutely appropriate for the Court to also look at what a similar type of- what would happen to a defendant had the defendant been prosecuted in the state system, and in this case, that analysis is particularly useful because, in fact, this case apparently began as a state case.

*Id*. at 686. On appeal, the *Clark* court vacated the defendant's sentence, finding improper the district court's consideration of state court sentences when calculating an appropriate sentence for a violation of federal law. *Id*. at 686-88. The court further explained that creating disparities between similarly situated federal defendants simply to eliminate the disparities that exist in "parallel federal and state systems of justice is unreasonable." *Id*. at 687.

As these other courts have recognized, § 3553(a)(6)'s admonition that sentencing courts avoid unwarranted disparities is directed only at federal court to federal court disparities, not those that may exist between federal and state courts. By considering state court sentences, a district court actually is re-injecting the locality disparity that the Sentencing Reform Act of 1984 ("SRA") was designed to guard against. *See Branson*, 463 F.3d at 1112. When Congress passed the SRA and created the Sentencing Commission, one of its primary goals was to "avoid[] unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct . . . ." 28 U.S.C. § 991(b)(1)(B). Undoubtedly, its intent was to create some uniformity amongst federal defendants convicted of federal crimes and sentenced in federal courts. There is no evidence to suggest that Congress intended for § 3553(a)(6) or the Guidelines to rectify the disparities between federal sentences and state sentences. *See Clark*, 434 F.3d at 687. Based on the persuasive precedent cited above, as well as congressional intent behind § 3553(a)(6), we join our sister circuits in holding that it is impermissible for a district court to consider the defendant's likely state court sentence as a factor in determining his federal sentence. Not only would a contrary rule enhance, rather than diminish, disparities, it also would permit district courts to impose *upward* variances based on state sentencing practices.

In the instant case, the district court erred by placing itself in the position of a "Michigan state court" and imposing the 24-month sentence on the basis that in state court Malone "very likely would have received a lower period of incarceration, possibly probation." Memorandum on Sentencing at 4 n.3. Congress's purpose of eliminating unwarranted sentencing disparities between the various federal districts would be thwarted if district judges, like the district court here, were permitted to "don the hat" of a local state court judge when imposing a sentence. Malone committed a federal offense, he was tried and convicted in federal court; thus, he is to be sentenced by a federal judge applying federal law. There are inherent disparities between federal and state court sentences, but such is the nature of a federalist system involving two independent sovereigns each having their own criminal justice systems. *See Clark*, 434 F.3d at 687. Furthermore, when a career offender such as Malone is involved, the federal-state sentencing disparity is "hardly serendipitous"; Congress crafted the career offender provisions in response to what it perceived as defendants "being treated too gently by state courts." *Snyder*, 136 F.3d at 69. If such a disparity forms the basis for a variance in Malone's case, then essentially every federal defendant sentenced as a career offender would be entitled to a downward variance. *See id*.

The district court's consideration of Malone's likely state court sentence as a factor in calculating his federal sentence renders the resulting 24-month sentence unreasonable. On remand, the district court must give due consideration to the § 3553(a) factors, as well as Congress's determination that career offenders such as Malone receive sentences "at or near the maximum term authorized." 28 U.S.C. § 994(h).

## III. CONCLUSION

For the foregoing reasons, we **VACATE** Malone's sentence and **REMAND** the case for resentencing consistent with this opinion.