NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0579n.06

No. 12-3960

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Jun 14, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff/Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| MIGUEL ESPERICUETA-PEREZ | ) | |
| | ) | |
| Defendant/Appellant. | ) | |

BEFORE:  GRIFFIN and KETHLEDGE, Circuit Judges; ZATKOFF, District Judge.[*]

ZATKOFF, Disrict Judge.

## I. OVERVIEW

On March 20, 2012, a grand jury in the United States District Court for the Southern District of Ohio indicted Defendant-Appellant Miguel Espericueta-Perez ("Espericueta-Perez") on a charge of illegal reentry of an alien into the United States after previously being deported or removed following a conviction for an aggravated felony offense in violation of 8 U.S.C. § 1326(a) and (b)(2).  (R. 10: Indictment, Page ID 13).  Espericueta-Perez pleaded guilty to the charge.  (R. 31: Guilty Plea Hr'g., Page ID 77–81).

On August 3, 2012, the district court sentenced Espericueta-Perez to 71 months of imprisonment, followed by three years of supervised release, and a mandatory special assessment of $100.00.  (R. 32: Sent. Hr'g, Page ID 103–04.)  Espericueta-Perez now appeals his sentence on

---

[*] The Honorable Lawrence P. Zatkoff, United States Senior District Judge for the Eastern District of Michigan, sitting by designation.

procedural and substantive grounds. For the following reasons, we AFFIRM the judgment of the district court.

## II. BACKGROUND

### A. FACTUAL BACKGROUND

Espericueta-Perez is a citizen and national of Mexico and has no legal status in the United States. On April 27, 2005, at age twenty-two, Espericueta-Perez was convicted in Highland County Court of Common Pleas in Ohio ("Ohio state court") of gross sexual imposition in violation of Ohio Rev. Code Ann. § 2907.95(A)(4), due to his recurring sexual activity with a twelve-year-old female, which ultimately resulted in her impregnation.[1] (PSR, p. 3, 5–6.) The Ohio state court imposed a four-year sentence of incarceration for this offense and required Espericueta-Perez to register as a sex offender for ten years. (*Id.* at 5–6.)

On November 25, 2005, the Ohio state court granted Espericueta-Perez judicial release and placed him on community control supervision with the directive that he participate in sex offender treatment. (*Id.*) Thereafter, on December 20, 2005, Espericueta-Perez was removed from the United States at the Laredo, Texas, port of entry. (*Id.* at 6). An absconder warrant was issued in the event that Espericueta-Perez returned to the United States. (*Id.*)

Sometime after his removal, Espericueta-Perez returned to the United States without applying for or receiving permission to reenter from either the Attorney General of the United States

---

[1] This offense—gross sexual imposition—is an aggravated felony according to § 101(a)(43)(A) of the Immigration and Nationality Act.

or the Secretary of the Department of Homeland Security. [2] (*Id.*) Espericueta-Perez was arrested on the absconder warrant on August 20, 2008, in Pennsylvania. (*Id.*) He was subsequently charged and convicted in the Ohio state court of failing to register a change of address as required for a sexually oriented offender and was sentenced to one year of incarceration. (*Id.*) Additionally, his community control supervision was revoked and he was ordered to serve the residual balance of the four-year term of imprisonment originating from the gross sexual imposition conviction. (*Id.*)

Espericueta-Perez served his sentences at Chillicothe Correctional Institution in Ohio. While housed at this institution, on January 12, 2009, Espericueta-Perez was encountered by Immigration and Customs Enforcement ("ICE") officers. (*Id.*) An ICE detainer was issued and on February 20, 2012, Espericueta-Perez was released from state custody and transferred to ICE custody. (*Id.*)

B. PROCEDURAL BACKGROUND

On March 20, 2012, a grand jury for the United States District Court for the Southern District of Ohio returned a single count Indictment charging Espericueta-Perez with illegally re-entering the United States as a previously removed alien following a conviction for an aggravated felony offense, in violation of 8 U.S.C. § 1326(a) and (b)(2). (R.10: Indictment, Page ID 13.) As a result of a plea agreement, Espericueta-Perez pleaded guilty to the charge on April 26, 2012. (R. 31, Plea Tr., Page ID 77–81.)

Espericueta-Perez was then referred to the probation department for preparation of a Presentence Investigation Report ("PSR"). The PSR calculated Espericueta-Perez's total offense

---

[2] When Espericueta-Perez was interviewed by the probation department for purposes of drafting a presentence report, he stated that, once removed, he remained in Mexico for approximately ten weeks.

3

level to be 21 and his criminal history category to be IV, which under the United States Sentencing Guidelines ("Guidelines") provided an advisory range of 57 to 71 months of incarceration and one to three years of supervised release.[3]  (PSR, p. 5–6.)  The PSR recommended a sentence of 63 months of incarceration and three years of supervised release.[4]  (*Id.* at p. 13.)

Espericueta-Perez and Plaintiff-Appellee United States of America ("the government") filed sentencing memoranda in which both parties concurred with the PSR's Guidelines computations. (R. 24: Def. Sent. Memo. p. 1; R. 25: Gov. Sent. Memo. p. 2.)  Counsel for Espericueta-Perez submitted that the nature and circumstances of the offense and his history and characteristics, the types of sentences available, and the need for deterrence all justified a below Guidelines sentence. (R. 24: Def. Sent. Memo. p. 2.)  The government, on the other hand, concurred with the recommended sentence.  (R. 25: Gov. Sent. Memo. p. 3.)

On August 3, 2012, the sentencing hearing was held by the district court.  With neither party otherwise objecting, the court adopted the factual findings and Guidelines calculations set forth in the PSR.  (R. 32: Sent. Hr'g, Page ID 95.)   The district court then assessed the factors codified in 18 U.S.C. § 3553(a), as discussed below.

The district court first noted the "seriousness" of Espericueta-Perez's instant offense and the "direct[] connect[ion] with his criminal history"—that is, his conviction of gross sexual imposition

---

[3] Espericueta-Perez's total offense level of 21 comprised a base offense level of 8 for the illegal reentry charge, a 16-level enhancement resulting from the gross sexual imposition conviction, and a 3-point reduction for acceptance of responsibility.

[4] We note that, though the "Recommended Sentence" for supervised release indicates "3 years," the PSR elsewhere states, "Since supervised release is not mandatory and the defendant will likely be deported upon release from imprisonment, a term of supervised release is *not* recommended."  PSR, Sent. Recommend. at 2–3 (emphasis added).

served as the aggravated felony element of 8 U.S.C. § 1326(b)(2). (R. 32: Sent. Hr'g, Page ID 100.) The district court acknowledged that Espericueta-Perez was released early from his state sentence, was deported, and yet returned to the United States soon thereafter despite "knowing that it was illegal" to return and "knowing that the penalties for illegal reentry after having been convicted of a felony would be severe." (R. 32: Sent. Hr'g, Page ID 101.)

The district court next discussed Espericueta-Perez's background. The court found that Espericueta-Perez was "raised by responsible parents," "was not a victim of any abuse," and "had a good upbringing." (R. 32: Sent. Hr'g, Page ID 101.) Accordingly, no circumstances about his family history warranted a mitigated sentence. (R. 32: Sent. Hr'g, Page ID 102.) The court also noted that while Espericueta-Perez's stated reason for returning to the United States was to be with his family, the PSR indicated some willingness on behalf of his children's mother to relocate to Mexico. (R. 32: Sent. Hr'g, Page ID 102.)

Before imposing its sentence, the court lastly addressed Espericueta-Perez's argument that the applicable Guidelines range was not based upon empirical evidence. The court believed that "regardless of how the [G]uidelines were arrived at," the specific circumstances present in his case—the seriousness of Espericueta-Perez's felony offense, his disregard for the law, and his expedited return to the United States—"suggest[ed] that [Espericueta-Perez] is not a person that is easily deterred from, again, illegally entering the United States." (R. 32: Sent. Hr'g, Page ID 102–03.)

Eventually, the court fashioned a 71-month term of incarceration. (R. 32: Sent. Hr'g, Page ID 103.) And, though the court intended that Espericueta-Perez be deported after imprisonment, his

"previous violation" caused the court to also impose a three-year period of supervised release to further deter his illegal reentry into the United States. (R. 32: Sent. Hr'g, Page ID 103.)

The district court then asked if either party had objections to the announced sentence. (R. 32: Sent. Hr'g, Page ID 104.) Espericueta-Perez first objected to the court's "characterization" of his judicial release, principally arguing that there was insufficient evidence in the record to suggest that he was released solely for deportation. (R. 32: Sent. Hr'g, Page ID 104.) The district court clarified that, irrespective of why Espericueta-Perez was released early, he nonetheless received a "reduced sentence for a very serious offense." (R. 32: Sent. Hr'g, Page ID 105.) In further response, the court not only viewed Espericueta-Perez's decision to return to the United States as a "lack of respect for the law" and a "lack of appreciation for the leniency" he received, but his return also served as a factor in assessing whether he was a risk for repeated illegal reentry. (R. 32: Sent. Hr'g, Page ID 105.)

Espericueta-Perez also objected to the imposition of supervised release "based on the provision advice found in Section 5D1.1(c) of the [G]uidelines." (R. 32: Sent. Hr'g, Page ID 104.) Espericueta-Perez timely appealed his sentence to this Court.

### III. LEGAL STANDARD

A district court's sentencing determination is reviewed "'under a deferential abuse-of-discretion standard,' for reasonableness." *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007) (quoting *Gall v. United States*, 522 U.S. 38, 46 (2007)). Reasonableness has both procedural and substantive components. *United States v. Jones*, 489 F.3d 243, 250 (6th Cir. 2007). "In reviewing for procedural reasonableness, a district court abuses its discretion if it 'commit[s] [a] significant

procedural error, such as failing to calculate (or improperly) calculating the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.'" *United States v. Johnson*, 640 F.3d 195, 201–02 (6th Cir. 2011) (quoting *Gall*, 522 U.S. at 51)).

In reviewing for substantive reasonableness, this Court must consider the sentence imposed in light of "'the totality of the circumstances, including the extent of any variance from the Guidelines range.'" *Id.* at 202 (quoting *Gall*, 522 U.S. at 51). A sentence may be substantively unreasonable "if the district court chooses the sentence arbitrarily, grounds the sentence on impermissible factors, or unreasonably weighs a pertinent factor." *United States v. Brooks*, 628 F.3d 791, 796 (6th Cir. 2011). When a sentence falls within the applicable Guidelines range, the Court affords it a rebuttable presumption of substantive reasonableness. *Id.*

## IV. ANALYSIS

Espericueta-Perez attacks the district court's sentence on three fronts, all of which purportedly require that his sentence be vacated:

> 1. The district court erred by imposing supervised release due to Espericueta-Perez's pending deportation upon completion of his incarceration;
>
> 2. The district court should not have set the length of sentence based on its disagreement with a state court's sentence imposed in an unrelated case; and
>
> 3. The 71-month term of incarceration was far greater than necessary to meet the purposes of sentencing and, therefore, was substantively unreasonable.

(Espericueta-Perez's Br., p. 7.)

**A.** PROCEDURAL REASONABLENESS

    i. THE DISTRICT COURT DID NOT ERROR BY IMPOSING SUPERVISED RELEASE

Espericueta-Perez first challenges his supervised release as procedurally unreasonable in light of Guidelines § 5D.1.1(c), and particularly application note 5 of that section. Section 5D1.1(c) states, "The court *ordinarily* should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment." U.S.S.G. § 5D1.1(c) (emphasis added). Application note 5 to this section provides supplementary instruction to courts:

> Unless such a defendant legally returns to the United States, supervised release is unnecessary. If such a defendant illegally returns to the United States, the need to afford adequate deterrence and protect the public ordinarily is adequately served by new prosecution. The court *should*, however, consider imposing a term of supervised release on such a defendant if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case.

U.S.S.G. § 5D1.1(c), application note 5 (emphasis added).

Espericueta-Perez does not seriously contend that the Sentencing Commission's choice of the word "ordinarily" as used above equates to a mandatory prohibition against imposing supervised release on defendants such as him. Rather, Espericueta-Perez submits that the record below demonstrates his case is ordinary, and the district court highlighted no facts suggesting otherwise. Thus, as Espericueta-Perez would have it, because the district court failed to "adequately explain" its decision to impose three years of supervised release, *see Johnson*, 640 F.3d at 201–02, his sentence was therefore procedurally unreasonable. We disagree.

From the outset at the sentencing hearing, the district court emphasized at great lengths Espericueta-Perez's criminal history and his return to the United States after deportation. As the district court mentioned, the seriousness of Espericueta-Perez's instant offense is intertwined with his criminal history. That is, Espericueta-Perez is charged with illegal reentry into the United States after deportation following a conviction of an aggravated felony—gross sexual imposition. The lower court found, and we agree, that the circumstances of the state offense are "quite troubling." Further, the district court acknowledged that, despite Espericueta-Perez's conviction for the state offense, judicial release, and subsequent deportation, he expeditiously returned to the United States fully apprised of the applicable penalties for illegal reentry following conviction of a serious felony. All of this, the district court found, suggested that Espericueta-Perez is not "easily deterred."

To be sure, the district court sought to fashion a sentence "sufficiently severe" to deter Espericueta-Perez from again illegally reentering the United States and to protect the public from any further offenses he could commit. And, as part of its sentence, the district court ultimately concluded that supervised release was warranted:

> Now, the Court also believes that it would be important to include as part of its sentence in this case a term of supervised release. And although it is the Court's expectation and intention that the defendant be deported; nevertheless, *in view of his previous violation*, the Court believes that a sentence of supervised release would, again, be a deterrent to his further illegal reentry into the United States. So, I am going to impose a three-year period of supervised release.

Sent. Hr'g at 12 (emphasis added).

Contrary to Espericueta-Perez's assertions, the decision to impose supervised release was, in fact, "adequately explained" by the district court during the course of the sentencing hearing. Espericueta-Perez's criminal history and otherwise undeterred disposition, as particularly discussed

by the district court, extends credence to the district court's conclusion that an added measure of deterrence and protection—namely, supervised release—was compelled. This Court thus finds no error.

Indeed, other circuits are similarly aligned. To illustrate, the Court turns to the recently decided cases of *United States v. Valdez-Cruz*, No. 12-13195, 2013 WL 674040 (11th Cir. Feb. 25, 2013), and *United States v. Martinez-Berrios*, No. 12-40041, 2012 WL 6634605 (5th Cir. Dec. 21, 2012) (per curiam). In *Valdez-Cruz*, it was noted that the lower court, by emphasizing the importance of deterrence at the defendant's sentencing, did not commit procedural error in imposing a sentence that included supervised release. There, the defendant's "disrespect for the law" by failing to appear for a drug-trafficking offense, his subsequent evasion of arrest, and his "admitted" illegal re-entry into the United States "only three months after deportation," justified the lower court's conclusion that an added measure of deterrence and protection would be served by imposing supervised release. *Valdez-Cruz*, 2012 WL 6634605 at *4.

Likewise, in *Martinez-Berrios*, when confronted with a defendant—a deportable alien—arguing that Section 5D1.1(c) militated against a term of supervised release in his case, the 5th Circuit found no error: "The district court's *particularized statements* concerning Martinez's history of repeated immigration violations, though brief, *were adequate to explain* why a supervised release term was appropriate to provide an 'added measure of deterrence and protection' in his case." *Martinez-Berrios*, 2012 WL 6634605 at *1 (quoting U.S.S.G. § 5D1.1(c), application note 5) (emphasis added).

Like the court in *Martinez-Berrios*, the district court in this case announced a particularized explanation that supervised release would provide an added measure of deterrence and protection based on the specific circumstances of Espericueta-Perez's case. And, like in *Valdez-Cruz*, where the court "emphasized the important of deterrence" based on the defendant's conduct, the district court here viewed Espericueta-Perez's criminal history and undeterred behavior as warranting something in addition to imprisonment. As such, the district court did not commit procedural error by imposing a three-year term of supervised release.

    ii. THE DISTRICT COURT DID NOT CONSIDER AN IMPERMISSIBLE FACTOR WHEN REFERENCING ESPERICUETA-PEREZ'S STATE SENTENCE[5]

Espericueta-Perez next submits that procedural error occurred at sentencing when the district court, in determining the appropriate length of sentence in the instant matter, "considered" the "leniency" granted by the Ohio state court. To bolster his position, Espericueta-Perez cites *United States v. Recla*, 560 F.3d 539 (6th Cir. 2009), and *United States v. Malone*, 503 F.3d 481 (6th Cir. 2007). In ordering remand, the *Recla* court found that a district court's consideration of a potential future sentence reduction in forming an appropriate sentence would constitute procedural error. *Recla*, 560 F.3d at 545–47. In *Malone*, the lower court considered the sentence the defendant likely would have received had he been prosecuted in state court when deciding to depart downward from

---

[5] Whether consideration of an impermissible factor is categorized under the procedural or substantive reasonableness prong is not fully settled within our Circuit. *See United States v. Malone*, 503 F.3d 481, 484 (6th Cir. 2007) ("Despite being categorized in our cases under the substantive reasonableness prong, consideration of an impermissible factor—it seems to us—more appropriately involves the procedural reasonableness prong; the challenge is more to the *process* by which the district court arrived at the given sentence than to the substantive aspect of the sentence (i.e., the relationship between the length of the sentence and the strength of the reasoning under § 3553(a))."). Espericueta-Perez categorizes his impermissible argument within the procedural reasonableness framework and we shall, for purposes of this appeal, consider it as such.

11

the applicable Guidelines range. *Malone*, 503 F.3d at 483. We ordered remand in *Malone* because relying on such a factor was impermissible and resulted in a procedurally unreasonable sentence. *Id.* at 486. Yet, both of these cases are inapposite here, as neither one is factually on point with the circumstances of the instant case. And notably, Espericueta-Perez fails to cite any authority to support his contention that a district court commits procedural error at a defendant's sentencing by considering a prior "lenient" state court sentence.

Second, and more importantly, Espericueta-Perez's argument—that a supposedly lenient state court sentence is an impermissible factor to consider—wholly misconstrues the record. Our review of the record reveals that the district court was chiefly focused on fashioning a sentence sufficient to deter Espericueta-Perez from again illegally reentering the United States and to guard citizens from future crimes. While it is true that the district court referenced the state court's apparent leniency, it did so to explain and support its overarching goal of including additional measures of deterrence and protection in its sentence:

> [Espericueta-Perez] committed the offense of gross sexual imposition on a minor. The circumstances of that offense are quite troubling. It involved repeated sexual activity with a child 12 years of age, which resulted in impregnating that child. He received a significant sentence from the State court but was released early, apparently, because the State court felt that his impending deportation proceedings would afford some measure of assurance that he would no longer be a danger to the citizens of the United States. So, he was released early from that sentence. He very soon thereafter returned to the United States, knowing that it was illegal for him to do so and knowing the penalties for illegal reentry after having been convicted of a felony would be severe.
>
> ***
>
> His activities, therefore, and his criminal history convince this Court that a sentence for this offense should be sufficient, number one, to deter him from again illegally reentering the United States and also sufficiently severe to serve as a protection to

the citizens of the United States from further criminal offenses by [Espericueta-Perez].

\*\*\*

[T]his Court is satisfied that the specific circumstances of this case and, in particular, the things I recited about [Espericueta-Perez's] offense, and in particular, the seriousness of his -- the crime that he committed and the leniency that he received before, which, obviously, resulted in a sentence which was not sufficient to deter him and the fact that he quickly returned to the United States again . . . suggest[s] that he is not a person that is easily deterred from, again, illegally entering the United States.

\*\*\*

[T]hat reduction in sentence, that leniency, whatever the reason, was not -- was not reciprocated on his part. And he, obviously, returned to the United States soon thereafter, which certainly indicates a lack of respect for the law, a lack of appreciation for the leniency that he received and is a factor for this Court in determining whether he is a risk and the degree of that risk for, again, returning to the United States.

So, whether that break was motivated -- that leniency was motivated by a hope that deportation would remove him for good, the Court would still arrive at the same sentence and, essentially, for the same reasons.

(R. 32: Sent. Hr'g, Page ID 100–03, 105.)

As the record demonstrates, the district court discussed Espericueta-Perez's early judicial release only in the context of discussing the gravity of heightened deterrence and protection. Such reference and discussion, made when carefully considering a range of relevant, permissible factors under § 3353(a), does not escalate to the level of procedural error.

**B. THE 71-MONTH TERM OF IMPRISONMENT WAS SUBSTANTIVELY REASONABLE**

Espericueta-Perez lastly challenges his 71-month term of incarceration as substantively unreasonable. We find that Espericueta-Perez has failed to carry his burden of rebutting the presumption of reasonableness afforded to the district court's imposed sentence.

13

This Court "consider[s] the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard[,] . . . tak[ing] into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51; *see United States v. Jeross*, 521 F.3d 562, 569 (6th Cir. 2008). "A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008).

A district court, provided it examines all the § 3553(a) factors, may place great weight on one factor if doing so is warranted under the facts of the case. *United States v. Zobel*, 696 F.3d 558, 571–72 (6th Cir. 2012); *accord United States v. Thomas*, 2011 WL 4014345, *2 (6th Cir. 2011) (unpublished) (quoting *Gall*, 552 U.S. at 57). Further, this Court has recognized that, "where a district court explicitly or implicitly considers and weighs all pertinent factors, a defendant clearly bears a much greater burden in arguing that the court has given an unreasonable amount of weight to any particular one." *Thomas*, 2011 WL 4014345, at *2 (internal quotation marks and citation omitted). How a district court chooses to balance the applicable sentencing factors is beyond the scope of our review. *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008); *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006).

"A sentence that falls within a properly calculated guideline range is afforded a rebuttable presumption of reasonableness, and it is incumbent upon the defendant to demonstrate that his sentence is unreasonable." *United States v. Brogdon*, 503 F.3d 555, 559 (6th Cir. 2007). This Court has explained, "[i]n general, [this Court] . . . must give 'due deference' to the district court's

conclusion that the sentence imposed is warranted by the § 3553(a) factors." *Bolds*, 511 F.3d at 581.

Hence, "[t]he fact that . . . [this Court] might have reasonably concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id*; *accord United States v. Vowell*, 516 F.3d 503, 511 (6th Cir. 2008).

Initially, Espericueta-Perez does not dispute the advisory Guidelines range applicable to him. As previously mentioned, based on his offense level, enhancement, reductions, and criminal history category, the PSR calculated a range of 57 to 71 months, which the district court expressly adopted at the sentencing hearing. The district court ultimately sentenced Espericueta-Perez to 71 months of imprisonment—squarely within the calculated range. We must, as a consequence, view the lower court's sentence with a presumption of reasonableness.

Generally speaking, Espericueta-Perez argues a sentence of less than 71 months of incarceration would have, among other things, reflected the seriousness of the offense and afforded adequate deterrence. Specifically, he alleges the district court committed reversible error by: (1) failing to adequately consider certain background facts during sentencing, for example, that he has three children and a wife who is a United States citizen and that he has maintained employment in the construction industry; (2) imposing the "largest sentence" for an immigration offense in the Southern District of Ohio as compared to other sentences in immigration cases within that district; and (3) failing to adequately consider at sentencing that the instant action involves his *first*— and not repeated attempts of—reentry after deportation.

We first mention that the district court was well apprised of the facts Espericueta-Perez now presents to this Court, and the record clearly reveals as much. Regarding his background, the district

court noted that Espericueta-Perez "was not a victim of abuse," "was raised by responsible parents," and "had a good upbringing." (R. 32: Sent. Hr'g, Page ID 101.) Thus, Espericueta-Perez's familial background did not impress upon the district court the need to mitigate his sentence. (R. 32: Sent. Hr'g, Page ID 102.) Espericueta-Perez's challenge that the district court did not adequately consider his familial or employment background[6] amounts to nothing more than disagreement with how the court weighed and balanced the § 3553(a) factors. Yet, as this Court has explained, such a claim does not present a viable challenge to Espericueta-Perez's sentence. *See Ely*, 468 F.3d at 404.

Espericueta-Perez also claims that the district court imposed the "largest sentence" for an immigration offense in the Southern District of Ohio when compared to 94 other immigration cases from that district. Because of this, Espericueta-Perez labels his sentence as substantively unreasonable. This claim is likewise divorced from legal merit.

First, Espericueta-Perez's brief is devoid of legal authority to support his assertion. In fact, he only directs the Court to the *Southern District of Ohio's Fiscal Year 2011 Guideline Sentences* located on the United States Sentencing Commission's website. Of the 94 immigration sentences imposed, there is no discernable way to determine the charging mechanism involved—that is, the Court is left to contemplate whether and to what extent those 94 defendants were convicted of violating 8 U.S.C. § 1326(a), (b)(1), (b)(2), or any other immigration offense. Espericueta-Perez

---

[6] Although the district court did not specifically address Espericueta-Perez's employment background at the sentencing hearing, such a discussion was not necessary. *See Johnson*, 640 F.3d at 203 ("The district court 'need not explicitly reference each of the [§] 3553(a) factors' in its sentencing determination; but there must be 'sufficient evidence in the record to affirmatively demonstrate the court's consideration of them.'") (citation omitted). The PSR provided a detailed history of Espericueta-Perez's life, including his employment background. The district court made clear during the sentencing hearing that it had reviewed the PSR prior to the hearing. Thus, this Court is convinced that the district court considered his employment when constructing the sentence.

16

was convicted under 8 U.S.C. § 1326(b)(2), arguably one of the more serious immigration offenses due to the required element of a prior aggravated felony. In any event, we find citation to the Sentencing Commission's records, without more, to be unpersuasive.

Second, even accepting Espericueta-Perez's apparent sentencing disparity argument at face value, the district court unequivocally declared at the sentencing hearing that its sentence was formed in consideration of the specific circumstances of *this* case. (R. 32: Sent. Hr'g, Page ID 102.) *See United States v. Corp*, 668 F.3d 379, 392 (6th Cir. 2012) ("The mere fact that a defendant cites other cases in which courts determined certain defendants to be deserving different sentences does not demonstrate abuse of discretion in the instant case."). The district court was deliberate in its consideration of the § 3553(a) factors and identified those it found to be most relevant—the serious nature and circumstance of Espericueta-Perez's offense, his criminal history, his lack of respect for the law, the need to protect the public from further criminal acts committed by him, and the need to deter him from illegally returning to the United States. The district court's proportionate discussion of these factors shows that it did not "fail to consider relevant sentencing factors" or "give[] an unreasonable amount of weight to any pertinent factor," and instead considered the "totality of the circumstances" when issuing Espericueta-Perez's sentence. *Conatser*, 514 F.3d at 520.

Espericueta-Perez last argues that the district court failed to properly consider that this case involves only his first attempt of illegal reentry. The record here, however, shows that the district court was undoubtedly aware that this was Espericueta-Perez's first and only violation of 8 U.S.C. § 1326(a) and (b)(2).

In the end, Espericueta-Perez's mere disagreement with how the court weighed the § 3553(a) factors does not demonstrate that his sentence is unreasonable. *Sexton*, 512 F.3d at 332; *Ely*, 468 F.3d at 404. Espericueta-Perez's arguments fail to overcome the rebuttable presumption of reasonableness that the sentence enjoys because it falls within the applicable Guidelines range. Therefore, we affirm the district court's imposition of a 71-month term of incarceration and hold that the length of his sentence is not "'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan–Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010).

## V. CONCLUSION

For the reasons stated above, we AFFIRM the sentence imposed by the district court.